MARY A. BLODGETT *vs.* THE CITY OF SYRACUSE.

The keeping of a house of ill fame is not an act of "carelessness or negli-
gence" within the meaning of the 3d section of the act of April 13, 1855,
which exempts counties or cities from liability for injury to, or destruction
of, private property in consequence of a mob or riot, when such injury or
destruction has been occasioned, or in any manner aided, sanctioned or
permitted by the *carelessness* or *negligence* of the owner, and he shall not
have used all reasonable diligence to prevent the injury.

THIS was an action to recover damages for injuries to the
plaintiff's dwelling house, occasioned by a riot, or mob.
The plaintiff, in the first count of her complaint, claimed
that the defendant was liable under the statute of April,
1855, "to provide for compensating parties whose property
may be destroyed in consequence of mobs or riots." (*Laws
of 1855, ch. 428, p.* 800.) In the second count she claimed
that the defendant was liable at common law. The 3d sec-
tion of the act of 1855 provides, that "No person or corpora-
tion shall be entitled to recover in any such action, if it shall
appear upon the trial thereof that such destruction was oc-
casioned, or in any manner aided, sanctioned or permitted by
the carelessness or negligence of such person or corporation;
nor shall any person or corporation be entitled to recover any
damages for any destruction or injury of property aforesaid,
unless such party shall have used all reasonable diligence to
prevent such damages," &c. By the 4th section of the act,
the remedy against the individuals engaged in the riot is
preserved. The defense to the action rested upon proof that
the plaintiff, at the time and place of the injury complained
of, kept a house of prostitution, which incited, or tended to
incite, the rioters to commit the injury sustained by the plain-
tiff. It was agreed by the parties, before the court and
under its direction, that no evidence of the amount of the
damage should be given, but that the jury should determine
whether the plaintiff was entitled to recover from the evi-
dence, and that the damage should be ascertained afterwards
by a referee. The court charged the jury that if she kept a

house of prostitution, and the character of the house contributed to produce the riot, the keeping such a house was such carelessness or negligence as brought the case within the statute, and the plaintiff in that case could not recover.

The plaintiff requested the court to charge the jury by submitting the following propositions separately to them:

*First.* That if the plaintiff kept her house as a house of ill fame, it constitutes no defense to this action.

*Second.* That the character of the house is entirely immaterial.

*Third.* That the keeping of a house of ill fame does not of itself furnish any evidence that the injury complained of was "occasioned, or in any manner aided, sanctioned or permitted, by the carelessness or negligence" of the plaintiff.

*Fourth.* There is not sufficient evidence in this case that the plaintiff's house was a house of ill fame.

*Fifth.* And further, as a question of law, the evidence detailed does not justify the act complained of.

*Sixth.* Merely keeping a house of ill fame is not carelessness or negligence, within the meaning of the statute.

The court declined and omitted to charge the jury as above requested; and declined and omitted to charge the jury upon either of the propositions submitted, to which omission and refusal the plaintiff excepted. The court, among other things, charged the jury that it was for them to determine from the evidence whether the plaintiff at the time of the injury complained of kept a house of prostitution, at the place where the injury occurred. That if the jury found the house to have been a house of ill fame, and the character of the house contributed to produce the riot, the keeping such a house was such carelessness or negligence as brought the case within the statute, and the plaintiff was not entitled to recover. The plaintiff excepted to the charge.

The jury found for the defendant, and the plaintiff appealed to the general term, from the judgment entered upon the verdict.

Blodgett *v*. The City of Syracuse.

*Charles Andrews,* for the appellant. The charge was justified by the facts proved, and by the law under which the action was brought.

I. It was competent for the jury to find from the evidence that the plaintiff kept at the time and place of the injury a house of prostitution, and that the rioters did the injury for the purpose of breaking up the business of the plaintiff, and that they were incited by the character of the house and the acts of violence which had occurred there.

II. The remedy of the plaintiff against the city is wholly founded upon the statute, and not upon natural equity, or the common law. The statute is to be strictly construed against the plaintiff. It is clear that the statute was not designed to insure the property of offenders against the law, where the property injured was used at the time for illegal purposes, and such use incited the violence which caused the injury.

III. The keeping of a house of prostitution is a public common nuisance, and can be abated by any person, or by proceedings upon indictment. (3 *Bl. Com. 5. 4 id.* 168. *Wharton's Crim. Law,* 702. *Jennings* v. *Cone,* 17 *Pick.* 26. *Warren* v. *The People,* 3 *Par.* 545.) The remedy by abatement by individuals is in all respects concurrent with that by indictment. (*Renwick* v. *Morris,* 3 *Hill,* 621.) The distinction between abating a public or private nuisance is this : A public nuisance may be abated by any one ; a private nuisance, only by the party injured. (*Lancaster Turnpike Co.* v. *Rogers,* 2 *Barr,* 114.) In *Meeker* v. *Van Rensselaer,* (15 *Wend.* 397,) it was held that a dwelling house, cut up into small apartments, inhabited by a crowd of people, in a filthy condition and calculated to breed disease, was a public nuisance which an individual might abate, especially during the prevalence of the Asiatic cholera.

IV. The injury in this case was in some manner "occasioned, aided, sanctioned or permitted, by the carelessness or

Blodgett *v.* The City of Syracuse.

negligence" of the plaintiff. (1.) In keeping a house of prostitution, she was violating the criminal law. (2.) By her act, she justified the remedy by abatement by individuals; a remedy naturally tending to a breach of the peace by individuals, who, entering upon the execution of the purpose of abatement in a legal manner, are led by excitement beyond the authority given them by the law. (3.) Houses of prostitution are held to be common nuisances, in part, because they endanger the public peace, and tend to incite violence—the very thing of which the plaintiff complains. Hawkins (*Pleas of the Crown, ch.* 74, *book* 1) says, "the keeping of bawdy houses comes under the cognizance of the temporal law as common nuisances, not only in respect of their endangering the public peace by drawing together dissolute and abandoned persons, but also in respect of their apparent tendency to corrupt the morals of both sexes." (1 *Russell on Crimes, p.* 323.) (4.) It would be difficult to give any construction to the statute, if it shall be held that the acts of the plaintiff in this case were not carelessness or negligence which in any manner occasioned, permitted or aided the production of the injury complained of, within the meaning of the statute.

V. The omission to charge, in the language of the request, that "merely keeping a house of ill fame is not carelessness or negligence within the meaning of the statute," was proper. The court, in substance, charged this proposition, by adding to it the qualification that the character of the house must have contributed to produce the riot. The reputation of the house and of the inmates frequenting it was competent evidence. (*Wharton's Crim. Law,* 703.)

*Geo. W. Gray,* for the plaintiff. I. The decision of the judge, admitting testimony going to show that persons of bad reputation occupied the house, was erroneous, and a new trial should be granted on that account. The character of

the persons frequenting a public and *licensed* house is no evidence of "carelessness or negligence."

II. The plaintiff, in order to present the question relied upon by the defendant, submitted six propositions, which we ask the general term to review; and we especially refer to the sixth proposition, which is this: Is merely keeping a house of ill fame "carelessness or negligence," within the meaning of the statute. (1.) This proposition has no reference to the *manner* of keeping it, but *the fact* of doing so. (2.) Carelessness means "heedlessness," "inattention." (*Webster.*) (3.) Negligence means "neglect," "omission to do." (*Webster.*) (4.) The legislature intended, by the terms "negligence and carelessness," an omission to do something which, if it had been done, the riot would have been prevented. (5.) The plaintiff was entitled to the ruling of the judge upon this proposition, that merely keeping a house of ill fame was not "negligence or carelessness," within the meaning of the statute.

*By the Court,* BACON, J. I am a little apprehensive that the learned justice who tried this cause, in his just indigna-tion against the infamous trade of the plaintiff, and his laudable zeal for the promotion of good morals, has been led to affirm a proposition which can hardly be sustained. This action is to be treated as brought under the statute of 1855, and the defense rests entirely upon the provision of the 3d section of that act, which exempts a corporation from liabil-ity for injury to, or destruction of, private property, when such injury or destruction has been occasioned, or in any manner aided, sanctioned or permitted by the carelessness or negligence of the person whose property has been destroyed, and he shall not have used all reasonable diligence to prevent the injury complained of. And the simple question, I think, is, whether the keeping of a house of ill fame is "an act of carelessness or negligence," within the statute.

The counsel for the defendant asked the judge to rule that

Blodgett *v.* The City of Syracuse.

it was not, and he refused to do so ; and to this refusal there was an exception.

It must be admitted that the statute is very loosely drawn, and the words "carelessness or negligence" may perhaps admit of a pretty wide interpretation. Normally, they mean heedlessness or inattention, and an omission to do something which operated proximately to bring about a result which would not have occurred if such carelessness or negligence had not existed. So that in respect to property which has been injured or destroyed by a mob, it seems to me the idea of the legislature was, that a party should not recover if he omitted some obvious precaution, or failed to exercise some care which, if it had been timely bestowed in view of a threatened or apprehended danger, would have averted the calamity.

It may perhaps be illustrated by supposing an individual to have a house filled with some combustible materials which, upon the approach of fire, he refuses to remove upon the application and urgent appeal of his surrounding neighbors. If, in such a case, a lawless mob should undertake to do the job for him, and in their hot haste and unregulated zeal should materially damage and despoil his premises, I do not suppose he could claim indemnity from the corporation.

This would be a case where it might very well be said that the destruction was occasioned by the negligence of the party who has suffered the damage, and which negligence operated as a proximate cause leading naturally to the result.

But can the keeping of a house of ill fame be called "an act of negligence or carelessness ?" It is an act detestable in morals, and criminal within the provisions of the law— something indeed much worse than negligence or carelessness. The law affords an ample protection to the community by proceedings for the suppression of the nuisance, and if the public authorities had performed their duty, there would very probably have been no occasion for an exhibition of the virtuous indignation of a promiscuous crowd, many of whom

were probably more intent on mischief than on vindicating outraged morality. It is always unsafe to let loose a multitude without legal restraint, and better to sustain some inconveniences, and even endure some wrongs until they can be redressed in the regular and due administration of justice, than to live under the jurisdiction of Judge Lynch, however valuable in their results his services have sometimes been..

It will be found difficult to put a limit to what may be deemed an act of carelessness or negligence, if so latitudinarian a construction is to be indulged. Suppose an individual should hold some opinion highly offensive to a large portion of the community, or indulge in practices deemed by many detrimental to the good order of society; would this be considered as conduct so careless or negligent that his house could by the aggrieved or offended parties be torn about his ears? I think no one would contend for quite so large a liberty as this would give to voluntary and unauthorized abators of what many might deem offensive and injurious.

The safety of community consists in the enforcement of legal remedies for proved or admitted wrongs; and it is better that indemnity should be provided for even worthless and unwholesome members of society, when they have suffered wrongfully, than to leave so large a discretion, and one so likely to be abused, in the hands of an irresponsible multitude.

My decided impression is, that an error was committed in the ruling on the trial, and that the judgment should be reversed, and a new trial granted, with costs to abide the event.

New trial granted.

[ONEIDA GENERAL TERM, January 7, 1862. *Mullin, Morgan* and *Bacon*, Justices.]