MORRIS SOLOMON, Respondent, *v.* THE CITY OF KINGS-
TON, Appellant.

*Destruction of property by a mob — it is no defense that it assembled for a lawful
purpose — the city is liable for property carried away as well as for that destroyed —
when notice need not be given to the mayor or sheriff.*

A building in which the plaintiff occupied a store caught fire; the fire not, how-
ever, having as yet reached his store, he remained in it, keeping the shutters and
doors closed.  A crowd, which had assembled to see the fire, having shown an
inclination to break into the store, the chief engineer turned a stream of water
upon them, whereupon he was struck with a brick, and went away to get a revol-
ver.  While he was gone, the crowd kicked the door and windows open, went
into the store, broke the show cases therein, threw and left upon the floor a por-
tion of the plaintiff's goods, and carried other portions of them away.

In an action by the plaintiff, brought under chapter 428 of 1855, against the city
in which the building was situated, to recover the damages sustained by him:

*Held*, that the fact that the original purpose for which the crowd had assembled,
viz., to see the fire, was a lawful one, did not constitute a defense, as they
had subsequently united in unlawful conduct and wrongfully broken into the
plaintiff's store.

That he was entitled to recover for the goods taken away by the mob as well as
for those destroyed upon the premises.

That he was not, under the circumstances of the case, bound to notify the mayor
or the sheriff of the threatened danger.

APPEAL from a judgment in favor of the plaintiff, entered upon
the report of a referee.

The action was brought under chapter 428, of the Laws of 1855,
to recover damages sustained by plaintiff, by reason of the destruc-
tion or injury of his property by an alleged mob or riot.

On the 1st day of December, 1874, the plaintiff was carrying on
business in the city of Kingston, in what was known as the "Samp-
son Building;" several other stores were in the same building.
His stock consisted of hats, gentlemen's furnishing goods, trunks,
valises and numerous other articles.  On the evening of December
1, 1874, at about nine o'clock, a fire broke out in the Sampson
Building, in a store occupied by one Sampson, and soon spread
over the upper part of the building.

Plaintiff, at about the time the fire broke out, was notified of it,
and warned to take his goods out of the store to a place of safety.

This he neglected to do, but put up his shutters and locked the doors. In from about three-quarters of an hour to an hour, a considerable crowd had gradually gathered in front of plaintiff's store, and began to give signs of a desire to break into it. Plaintiff then hired two or three men to assist him in protecting his property. After about half an hour, the crowd becoming more boisterous, the plaintiff applied to the chief engineer of the fire department for protection. The latter then turned a stream of water upon the crowd, when he was struck with a brick and went away to get a revolver. The crowd fell back for a moment; but immediately after the stream was turned back upon the fire, it rushed towards the store, and, after knocking down plaintiff, broke into the store, and took and carried away a great part of plaintiff's stock.

*Charles M. Preston,* for the appellant.

*E. S. Wood,* for the respondent.

LEARNED, P. J.:

The defendant insists, in the first place, that there was no mob or riot, because the crowd assembled at first for a lawful purpose, and that there was no combination. But it is plain that though the original purpose for which the crowd assembled was lawful, yet they might unite in unlawful conduct, and thus become rioters. "If, in an assembly of persons met together on any lawful occasion whatsoever, a sudden proposal should be started, * * * or to do any other act of violence, * * * and such motion be agreed to and executed accordingly, the persons concerned cannot but be rioters, because their associating themselves together for such a new purpose is in no way extenuated by their having met at first upon another." (Hawk. P. C., bk. 1, chap. 65, § 3; Alb. Law Journal, vol. 22, 403.) Nor was it necessary that there should be a leader. The crowd breaking into and pillaging the plaintiff's store were mutually aiding and assisting each other. The crowd broke in; kicked the door open, and went in through the door and the windows. Thus there was a combined breaking into the store, and a joint act of the crowd.

The defendant next insists that, as the property lost by the plain-

tiff was carried away by the crowd, it was not, within the meaning
of the act, destroyed. It appears that the show cases were broken;
and that hats and shirts were lying in the store the morning after
the riot; and that many goods, such as boots and shoes, were carried
off by the rioters. The evident meaning of the act, chapter 428,
Laws 1855, is to compensate persons who suffer in their property
by reason of mobs and riots. It could make no real difference
whether the rioters actually destroyed the personal property on the
premises of Solomon, or whether they took it out of his premises
and then actually destroyed it. And whether they destroyed the
boots and shoes by cutting them to pieces, or by wearing them out,
would matter very little to the plaintiff. We think that the fair
meaning of the act is that given in *Sarles* v. *New York* (47 Barb.,
447); that the property was destroyed, as to the plaintiff, when the
rioters carried it off. Plunder, as well as wanton injury, is usually
the work of such rioters; and the result to the injured person is the
same from either wrong-doing.

Next, the defendant insists that the plaintiff did not, according
to the statute, notify the mayor or sheriff immediately after being
apprised of any threat or attempt to destroy, etc., of the facts brought
to his knowledge. In this case a fire had broken out in the build-
ing in which the plaintiff occupied a store. The fire did not reach
the plaintiff's store, and he was keeping his shutters up and his
store closed. The crowd gathered around his store. He was advised
that, if he wished to save his goods, he would better get them out.
But this was advice given in reference to the danger from fire, not
to the danger from a mob. It does not appear that the danger
from the mob had been long apprehended. The chief engineer,
seeing that the mob were inclined to break in, turned a stream of
water upon them; then he was struck with a brick, and went away
to get a revolver. When he returned, after an absence of fifteen
minutes, the store had been broken open and the goods destroyed.
The referee properly held that the plaintiff had no time within
which to notify the mayor or the sheriff; and was, therefore, not
bound to do so. (*Moody* v. *Supervisors*, 46 Barb., 659; *Ely* v.
*Supervisors*, 36 N. Y., 297.) When the crowd became threatening
around plaintiff's store, if he had deserted the store in order to seek
out the mayor, the defendants might have urged that the plaintiff

had not used reasonable diligence to prevent the damage. The first assembling of the crowd gave no occasion for alarm, because they had come to see the fire. When the crowd became a riot there was no time to give notice.

These are the only points raised by the defendant, and we see no reason to reverse the judgment.

Present — LEARNED, P. J., BOARDMAN and BOOKES, JJ.

Judgment affirmed, with costs.