LONG, Appellant, vs. CITY OF NEENAH, Respondent.

*February 26—April 17, 1906.*

*Municipal corporations: Liability for injuries by mob: Notice of threats, etc.: Negligence of person injured.*

1. Under secs. 938, 939, Stats. 1898 (giving a right of action against a city for injuries inflicted by a mob, provided the person injured shall have immediately notified the mayor of the city after being apprised of any threat or attempt to injure him by

any mob), the notice must be given by or on behalf of the person claiming damages; and a notice given by an employer, not on behalf of its employees, of the likelihood of mob violence on account of a strike, does not inure to the benefit of the employees.

2. The evidence in this case, although it shows that plaintiff and others had been jeered at on the street and called "scabs" by crowds, who also said "we will knock your block off," etc., is *held* not to show that he had been apprised of any threat or attempt to injure him by the mob which met and assaulted him on his return to defendant city in the nighttime after an absence of two or three days.

3. Evidence showing, among other things, that plaintiff, a nonunion man, left his place of employment in the nighttime and went to and from the railroad station unaided and unguarded, is *held* not to show that injuries inflicted upon him by a mob were caused by his negligence.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

The complaint alleges, in effect, that this action is brought against the city to recover damages sustained by the plaintiff while a resident of the city and in the employ of Kimberly & Clark Company as a workman at the Badger Mills, so called, in said city, on the morning of July 5, 1904, at said city, by being set upon by a riotous mob, consisting of the six persons therein named and other persons unknown to the plaintiff; that such persons were then and there assembled in a violent and tumultuous manner with the common purpose to do an unlawful act, to wit, to terrify the plaintiff and other persons, and by terror and violence to prevent the plaintiff and other persons from aiding in the operation of said mills of said company in said city; that the plaintiff was then and there by such mob beaten, cut, bruised, and injured, and the said injuries were so inflicted upon him by said mob for the purpose of terrorizing, intimidating, and preventing the plaintiff and other persons from serving said company in the running of said mills; that the plaintiff tried to escape from said mob and avoid such injury, but was unable to do so; that such

injuries were so inflicted upon the plaintiff against his will and without any fault or neglect on his part; that no opportunity was. given to the plaintiff to notify the mayor of the city or the sheriff of the county or any other officer of the city or county of the threatened injury after he became apprised of the threat or danger thereof; that such attack was made on the plaintiff without notice, and after it was apparent to the plaintiff that such attack was to be made he had no opportunity to avoid such injuries or to get aid from any person able or willing to prevent such injuries; that such injuries so inflicted did great bodily harm to the plaintiff and caused him great pain and injury, to his damage in the sum of $2,000. The city answered by way of admissions, denials, and counter allegations. At the close of the testimony on the part of the plaintiff the court granted a nonsuit, and from the judgment entered thereon the plaintiff appeals.

For the appellant there were briefs by *Hooper & Hooper,* and oral argument by *Moses Hooper.*

*J. Mulloy* and *F. C. Stewart,* for the respondent.

CASSODAY, C. J.  It appears from the undisputed evidence that the plaintiff left Neenah, where he had been at work for some time, on Saturday evening, July 2, 1904, and went to Chicago, and returned therefrom to Neenah a little after 3 o'clock on the morning of Tuesday, July 5, 1904, where he was met at the depot by a riotous mob and by them was beaten, bruised, and pounded cruelly. While the fact is involved in this controversy, yet we are not here called upon to consider the liability or punishment of such offenders. The plaintiff is here seeking to hold the city liable for the damage so inflicted upon him by the mob. It is well settled that at common law a municipal corporation is not liable for damage done by mobs within its limits either to persons or property. 20 Am. & Eng. Ency. of Law (2d ed.) 1206; 2 Dill. Mun. Corp. (4th ed.) § 959. The liability of the defendant to the

plaintiff in this action, if any, is purely statutory.   Our statute provides, in effect, that "whenever any property . . . shall be destroyed or injured by or in consequence of any mob or riot, the city . . . in which such property is situated shall be liable to the owner thereof for the damages· so sustained by him."   And in like manner a remedy in law is thereby "given against such city . . . for any bodily harm or injury so sustained by any person."   Sec. 938, Stats. 1898. But the liability so prescribed is limited by the next section,. which, omitting what is not applicable here, declares that:

"No person shall be entitled to recover under the provisions of the preceding section when such . . . injury to his . . . person was occasioned or in any manner aided, sanctioned or permitted by him or caused by his negligence, nor unless he shall have used all reasonable diligence to prevent the same, and shall have immediately notified the mayor of the city . . . after being apprised of any threat or attempt . . . to do harm or injury to his person by, any such mob or riot."  ·Sec. 939, Stats. 1898.

The validity of such statutes is not questioned.   No recovery can be had unless the right of action is given by the statute, nor without complying with the terms of the statute. It has been held under somewhat similar statutes that, although such statutes were penal in their nature, still they must be liberally construed, because they were also remedial. *Allegheny Co. v. Gibson,* 90 Pa. St. 397.   Certainly, they must be fairly construed.   "Even penal statutes are not to be construed so strictly as to defeat the obvious intention of the legislature."  *State v. Shove,* 96 Wis. 1, 9, 70 N. W. 312, and cases there cited.

The principal ground of defense is that the plaintiff, *"after being apprised* of any threat or attempt . . . to do harm or injury to his person by any such mob or riot,"·did not "immediately notify the mayor of the city," as required by the section quoted.   It is claimed on the part of the plaintiff that the written notice given to the mayor by the Kimberly &

Clark Company about two weeks before the injury complained of, inured to the benefit of the plaintiff. But as we read the statute the notice required must be given by or on behalf of the person claiming damage. Thus, in New York, under substantially the same statute, where the property destroyed belonged to several tenants in common, it was held that such of the tenants as had knowledge of the threats several days before the injury, but failed to notify the sheriff, could not recover, but that such of the tenants as "had no personal knowledge of the threats were entitled to recover." *Loomis v. Oneida Co.* 6 Lans. 269. In the case at bar it is frankly admitted that the plaintiff gave no notice. So the question is whether he knew facts which required him to give notice. In construing such statute a New York court held that:

"The statute should be so construed that if a party is informed of a threat and have time to notify the sheriff so that he can take all legal means to protect the property, then the omission to give the notice is fatal." *Schiellein v. Kings Co.* 43 Barb. 490.

In a later case in that state it was held that:

"The provision of the act requiring notice to be given to the mayor of the city or sheriff of the county after the owner of property has been *apprised* that a threat or attempt has been made to destroy or injure the same by any mob or riot, necessarily contemplates that a sufficient period of time shall intervene between the threat or attempt and the execution of it to admit of the notice being given." *Moody v. Niagara Co.* 46 Barb. 659.

In a later case in the court of appeals in that state it was held that such "notice to the public officers will not be required where the party injured had no information in respect to which to give the proper notice." *Ely v. Niagara Co.* 36 N. Y. 297. In a still later case it was "held that the fact that the original purpose for which the crowd had assembled, to wit, to see the fire, was a lawful one, did not con-

stitute a defense, as they had subsequently united in unlaw-
ful conduct and wrongfully broken into the plaintiff's store;
that he was entitled to recover for the goods taken away by
the mob, as well as for those destroyed upon the premises;
that he was not under the circumstances of the case bound to
notify the mayor or the sheriff of the threatened danger."
*Solomon v. Kingston,* 24 Hun, 562; *S. C.* affirmed, 96 N. Y.
651. From these adjudications, as well as the language of
the statute, the plaintiff was only required to notify the mayor
of any threat or attempt of the mob or riot to do him personal
harm or injury, after being apprised of the same.

From the evidence before us it is manifest that there was
no opportunity, after the plaintiff returned from Chicago on
the morning of July 5, 1904, and before the injury, to notify
the mayor that the mob was then present threatening him
with personal harm or injury. Whether there was any threat
or attempt by any mob or riot to do the plaintiff personal
harm or injury before he went to Chicago does not clearly ap-
pear from the evidence. The plaintiff testified to the effect
that he went to work for the company June 13, 1904; that
he was then told by the company that there was liable to be
a walkout and they wanted new men to fill the places; that
until June 20, 1904, the men employed took their meals at
the Russell House, a big block away from the Badger Mill
where they worked; that such employees were all nonunion
men; that they would go from the mill to the Russell House
in crowds of four to six; that during that week there was al-
ways a crowd on the street, apparently made up of union men
and their sympathizers, who would jeer them and call them
vile names, such as "scabs," "we will get you," "we will
knock your block off," and the like; and on one occasion dur-
ing that week two of the boys who worked in the mill were
knocked down, and the plaintiff for a moment considered
himself in danger; that he did not recognize any of the mob
at the depot as the same individuals he had seen around the

Russell House during the week mentioned, but they seemed to be connected with the same enterprise; that from June 20, 1904, to July 2, 1904, when the plaintiff went to Chicago, he and the other nonunion men at work for the company took their meals in the mill. We find no evidence in the record that before the plaintiff went to Chicago he had been "apprised of any threat or attempt . . . to do harm or injury to his person by" the "mob or riot" which met him at the depot on his return from Chicago.

Counsel for the defendant also contends that the injury to the plaintiff was "caused by his negligence" in leaving the mill alone and going to and from the depot unaided or unguarded. But we fail to find any evidence in the record tending to prove, much less conclusively proving, that the injury was caused by his negligence, or that he was chargeable with a failure to exercise "reasonable diligence to prevent the same." In fact, there is no evidence of misconduct on the part of the plaintiff.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

KERWIN, J., took no part.