PORTAGE CO-OPERATIVE CREAMERY ASSOCIATION, Appellant, vs. SAUK COUNTY, Respondent.

*November 7—December 4, 1934.*

For the appellant there was a brief by *Rogers & Owens* of Portage.

*Clifford LaMar,* district attorney of Sauk county, for the respondent.

FAIRCHILD, J.   The state clothes certain municipalities with powers and exacts from them the performance of certain duties.   Among the powers granted is that of maintaining a police force; among the duties exacted is that of preserving the public peace.   It was the duty of the respondent county in this case to preserve order and give security to persons within its borders at the time of the happening of the incident out of which this action arises.   The statute law of this state provides for the recovery of damages by

persons injured by a riot or mob. Sec. 66.07, Stats., reads as follows:

"(1) The county shall be liable for injury to person or property by a mob or riot therein, except that within cities the city shall be liable.

"(2) . . .

"(3) . . .

"(4) No person shall recover hereunder when the injury was occasioned or in any manner aided, sanctioned, or permitted by him or caused by his negligence, nor unless he shall have used all reasonable diligence to prevent the same, and shall have immediately notified the mayor or sheriff after being apprised of any threat of or attempt at such injury. Every mayor or sheriff receiving such notice shall take all legal means to prevent injury, and if he refuses or neglects to do so, the party injured may elect to hold such officer liable by bringing action against him within six months of the injury."

There is no question but that the appellant suffered damage at the hands of a mob on the 10th day of November, 1933, and it cannot be seriously questioned that the appellant is entitled to recover from the county of Sauk in which the riot occurred, unless appellant had some previous notice of a threat of injury and failed to notify the sheriff thereof. The questions thus suggested must be answered by the occurrences at the appellant's plant on the 7th day of November, 1933. The evidence in relation to the statement upon which the respondent relies to establish the fact that a threat of injury was made to the appellant may be briefly summarized as follows: Mr. Doyle, the manager of the appellant, was visited by a delegation of men. He testified that on November 7th such delegation called on him in relation to a farm strike matter; that he dealt with them through their spokesman, a man named Alexander; that no threats of any kind were made; that "they requested that we not solicit any of the Excelsior Creamery patrons; requested that we close with the

exception of the bottle milk department and that we receive milk, paying $1.80 a hundred for the milk and pay the strike fund 90 cents or half of the amount." He further testified that a committee from the strikers in Sauk county called on him and the directors of the company on the 8th of November; that at that time no threats were made by that committee. Mr. Doyle also testified that no report of any threat of any character was communicated to the company by any employee of the company, and that he never at any time notified the sheriff of Sauk county of any threat until after the riot November 10th. But it does appear that on the 7th of November a man by the name of Jensen, at some time while the delegation was at the plant of the appellant, said to Peter Rassmussen, who was also present: "If you don't keep out of Sauk county, it will be just too bad," or words to that effect. It is upon this statement that the defense of this action rests and the questions which arise are: Was the statement made by Jensen to Rassmussen a threat to injure the property of appellant; and did the appellant have knowledge of that threat by reason of the fact that it was made to Rassmussen, an employee of the company and a driver of a truck upon one of the routes of the appellant which entered Sauk county? The evidence does not show that the words used were the expression of an intention of any group of Sauk county strikers. It does not appear to have been occasioned by any attitude taken by Mr. Doyle, who unquestionably was representing the company at the time the delegation visited him.

The employer is not chargeable with knowledge of the substance of every conversation that may occur between his employee and another. When the employer holds out the employee as his representative in a particular transaction or generally, those who deal with the employee are entitled to consider such employee as agent of the company, and his

knowledge gained in the transaction may become the knowledge of the principal. But the agent must know that he is the agent and is being treated as such and not as an individual. It is not enough that he might have been the agent; there must be circumstances which under reasonable calculation would cause the one addressed to realize he was an agent and was being dealt with as such. The efficiency of the law would be greatly impaired and in many instances would be entirely destroyed if, when a delegation is dealing with the recognized head and representative of the employer, an isolated statement of one present to an employee also present but not otherwise taking part in the proceedings, could be regarded as a conversation between a mob and the employer. The events, considered in the light of the present, and uncolored by subsequent events, leave no doubt but that on the 7th day of November the talk of Jensen with Rassmussen did not constitute a notice of threat to the appellant of interference with its business by a mob. The assembly was orderly and no evidence appears under which warrant exists for styling it a mob. The strikers were represented by Mr. Alexander as their spokesman. They understood that Mr. Doyle represented the appellant and they carried on their negotiations with him. Just when in the proceedings Mr. Jensen made his remark or threat to Rassmussen does not appear, but it is established that at the proceedings on November 7th, no threats were made to the representative of the company on the part of the delegation. There was not made manifest any attitude of a menacing nature. The following day, November 8th, a delegation representing the Sauk county strikers conferred with Mr. Doyle and the directors of the appellant, and that conference ended without any threats of injury to the appellant. In the meantime, the company was continuing its business but, as stated upon the argument, refrained from soliciting business from certain producers. Rassmussen, a driver

of one of the company's trucks, traveled his route unmolested until the 10th of November when the riot occurred and the damage complained of was done. Rassmussen does say that when he saw Jensen with the men "who dumped his cream" from his truck, that he recalled the conversation with Jensen on the 7th, and the words doubtless had more significance when Jensen and the others approached him; a significance which they did not have under the circumstances as they existed on the 7th. While Rassmussen was on that route on the 10th, he was the representative of the company. The situation would require him to report the matter and the company would be chargeable with knowledge of what transpired. There is no question raised as to the timeliness on the appellant's part in reporting the riot.

On the 7th of November, Jensen was not a member of a mob; there was no mob. Rassmussen was not then a representative of the company. All present knew that Doyle was the representative; all present, including Rassmussen, knew that the delegation was carrying on its negotiations with the appellant through Mr. Alexander. Of those present on the 10th, Mr. Jensen is the only one identified as having been at the appellant's plant on the 7th. On these circumstances alone, appellant is entitled to recover under the law as set forth in *Long v. Neenah,* 128 Wis. 40, 107 N. W. 10.

The finding of fact that Jensen was the spokesman of the delegation November 7th, is against the great weight and clear preponderance of the evidence and therefore cannot be sustained. The evidence does not show any failure or neglect on appellant's part. The judgment upon the record should have been in appellant's favor. The evidence shows the value of the property destroyed to be $72.28.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in favor of plaintiff in accordance with this opinion.