Froessel, J.
On December 22, 1957, at about 2:15 a.m., plaintiff, a 22-year-old unmarried young woman, was severely injured when an automobile operated by defendant Mastrangelo, in Which she was riding as a passenger, collided with an automobile operated by defendant Meeker, on Oriskany Street in the City of Utica. Parked partly on the south shoulder of Oriskany Street—its exact position is in dispute — at the time of the accident was the patrol car of the Deputy Sheriff of Oneida County, defendant Zambón, who shortly before had apprehended a speeding motorist. Following a conversation with the latter, Zambón returned to his patrol car to prepare a summons, whereupon the three passengers who had alighted from the vehicle of the apprehended motorist came alongside the patrol car to talk with Zambón. While thus engaged in conversation, the cars of Meeker and Mastrangelo approached from opposite directions.
Mastrangelo testified that, after he passed under the ‘ ‘ Halfway Bridge ” into Utica on Oriskany Street, he noticed a “ red flasher light ” ahead of him on the southerly side of the road. As he drew closer he noticed that the light came from a county car, which he stated was parked with the left rear portion on the road. He also noticed men standing alongside. Meeker, coming from the opposite direction, also noticed the flashing red light on the county car, and men standing alongside on the paved portion of the road. As Mastrangelo approached the county car and the men alongside it, he turned his car to the left. At about the same time, Meeker was allegedly attempting to pass another automobile proceeding westerly ahead of him. He saw a flash of lights come towards him (Mastrangelo’s ear) and both cars met in the center of the road head on. As a result of the impact, Mastrangelo’s automobile was pushed back and swung around, striking the left rear door of the patrol car.
Oriskany Street, where the accident occurred, is 78 feet wide. Its paved portion, consisting of three 10-foot lanes, is flanked *117 on the north and south by wide shoulders of about 24 feet each. At the place of the accident the shoulder to the south was 26 feet wide.
It is contended on this appeal by the defendants Meeker, Mastrangelo and Zambón that none of them was negligent nor did any of them proximately cause plaintiff’s injuries. All of the members of this court agree that there is ample evidence in this record to sustain the jury’s contrary finding as to defendants Meeker and Mastrangelo. A majority of us similarly agree as to defendant Zambón.
The testimony of Mastrangelo that Zambón’s ear was parked partially on the paved portion of the street was supported by one Siemski who testified to similar effect. Siemski was traveling behind Mastrangelo’s car prior to the collision. Other witnesses stated at the trial that Zambón’s car was about 2 feet off the paved portion of the road. It is undisputed, however, that the 26-foot-wide shoulder on the south side, at the place where Zambón’is car stood, was level for a distance of up to 15 feet south of the paved roadway; and that the shoulder was wet but firm. It is also undisputed that traffic at about the time of the accident was exceptionally heavy—according to Zambón’s own testimony.
Certainly the jury had a right to find on the basis of the foregoing evidence that the Deputy Sheriff did not act reasonably under the circumstances, and that he negligently obstructed the highway. Taking the view of the evidence most favorable to plaintiff, as we must do in light of the verdict in her favor, it may be said that Zambón chose to obstruct the travelled part of the roadway on a night when traffic was exceptionally heavy, and failed to make full use of the 15-foot expanse of firm shoulder which was available to him. The, jury also had a right to find on the facts when thus viewed that Zambón’s negligence was a proximate cause of the accident and plaintiff’s resulting injuries — together, of course, with the negligent acts of Mastrangelo and Meeker (Peck v. Independent Auto Forwarding Corp., 280 N. Y. 728; Sargent v. Wass, 279 N. Y. 747; Lugert v. Cohen, 303 N. Y. 642; Overhaugh v. Emory Transp. Co., 1 A D 2d 729; see, also, Axelrod v. Krupinski, 302 N. Y. 367; Bacon v. Rochester Tr. Corp., 1 A D 2d 759; Rosen v. *118 Leibowitz Pickle Works, 257 App. Div. 855, motion for leave to appeal denied 281 N. Y. 889).
The cases cited by Zambón in alleged support of his position are readily distinguishable. Most deal with instances where an automobile parked on the side of a highway had ceased to operate because of mechanical difficulties, and hence could not be moved onto a shoulder; or an available shoulder on which to pull over was lacking. Others are distinguishable in' that there was lacking a ‘ ' clear sequence ’ ’ or continuous stream of events culminating in injuries to plaintiff; or that" it clearly ‘ ‘ could [not] have been reasonably anticipated ’ ’ under the circumstances, as here, ‘ ' that the consequences complained of would result from the alleged wrongful act ” (Saugerties Bank v. Delaware & Hudson Co., 236 N. Y. 425, 430).
As to the responsibility of the County of Oneida, it is true that ordinarily a governmental subdivision of the State would be liable upon the finding that its employee negligently caused injury to another in the course of performing his official duties (see County Law, § 53, subd. 1). The County of Oneida contends, however, that holding it vicariously liable in this case for the negligent acts of its Deputy Sheriff, as did the courts below, violates section 5 of article IX of the New York State Constitution, which provides in relevant part that “ Sheriffs * * * may be required by law to renew their security, from time to time; and in default of giving such new security, their offices shall be deemed vacant. But the county shall never be made responsible for the acts of the sheriff. ” (Emphasis supplied.)
This immunity provision was first added to our Constitution in 1821 as part of section 8 of article IV (see text in Lincoln, Constitutional History of New York, Vol. 1, pp. 205-206). The principal purpose of section 8 of article IV, apparent from its language and the debates at the 1821 constitutional convention, was to make the office of Sheriff an elective one (see Proceeding's and Debates, Constitutional Convention, 1821, at pp. 384-392 [Oct. 9, 1821]). Theretofore the office was an appointive one (N. Y. Const, of 1777, art. XXVI, at Lincoln, op. cit., supra, Vol. 1, p. 179).
The delegates to the 1821 constitutional convention vigorously debated the merits of electing Sheriffs to office. Immediately *119 after the resolution proposing the change was carried, “ Mr. Munro offered an amendment as follows: ‘ But the county shall never be made surety for the sheriff, nor responsible for his acts.’ ” This proposed amendment was not debated by the convention. The minutes bear the simple notation that the amendment was “Carried”. Thus the immunity clause — in effect a rider to the provision for electing Sheriffs — became a part of our State Constitution.
At subsequent constitutional conventions, resolutions were offered to repeal the immunity provision, but they were never carried, with the result that this provision has endured to the present day as part of our Constitution. At the convention of 1867, Mr. Cooke proposed to repeal this provision, contending that the immunity provision ‘ ‘ is unnecessary, and deals • with matters that ought to be the subject of legislative action rather than of constitutional provision”. Debate followed, and the proposed amendment was defeated (Convention Proceedings and Debates, 1867-1868, Yol. II, pp. 924^926; see, also, id., Vol. V, p. 3653).
At the 1938 constitutional convention, a proposed amendment (Int. No. 470) introduced by Mr. Platt was referred to the Committee on Counties and Towns (Revised Record, N. Y. State Const. Convention, 1938, Vol. I, p. 237). The committee reported favorably (id., Vol. II, pp. 1016-1017), and when the amendment was reached on the General Order Calendar the following occurred:
1 ‘ Mr. Platt: I should like to move to recommit General Order No. 69, Int. No. 470, Pr. No. 799 to the Committee on Counties and Towns. That was a bill that was introduced at the instance of some of the sheriffs of the State, which would place the burden of responsibility on the county rather than the sheriffs. They feel now that it should not be done, and I therefore move to recommit.
‘ ‘ The President: Of course, you understand an order to recommit means to take it off of the calendar for good? Those in favor of the motion signify by saying Aye; contrary minded, No. The motion is carried. That disposes of it.” (Id., Yol. Ill, p. 2541.)
Another amendment eliminating the provision as to nonliability of counties for actions of Sheriffs was also proposed *120 (Pr. No. 601, Int. No. 573; N. Y. State Const. Convention, 1938, Proposed Arndts., Yol. II). This too was not carried (see Revised Record, N. Y. State Const. Convention, 1938, Yol. I, p. 254; id., Yol. II, p. 745).
The immunity clause of section 5 of article IX has been construed by the courts on a number of occasions. The earliest reported case is that of Wolfe v. Supervisors of Richmond County (19 How. Prac. 370 [Sup. Cl, I860]). There involved was an action under the statute (L. 1855, ch. 428)—alluded to at the 1867 convention — providing that a city or county shall be liable in damages to a party whose property is destroyed by a mob or riot. The question presented was whether that statute violated the immunity provision of section 5 of article IX (then art. X, § 1). It was held that it did not. Justice Ingraham construed the immunity provision as follows (19 How. Prac. 373): “ The true construction of this clause is, that for anything done by the sheriff in the discharge of his official duties, the county shall not be liable. If it had been averred that the sheriff, while attempting to preserve the peace, illegally took possession of and destroyed the plaintiff’s property, this provision would apply and would protect the county from liability.’’ (Emphasis supplied.) He then reasoned that “ The statute of 1855 does not place the responsibility either on the act of the sheriff, nor as the defendant supposes, on the neglect of the sheriff to act. The only ground of liability is the existence of a mob or riot in the county, and the destruction of property by such mob.” {Id.)
The Wolfe case was followed in Moody v. Board of Supervisors of Niagara County (46 Barb. 659, affd. sub nom. Ely v. Supervisors of Niagara County, 36 N. Y. 297), where it was similarly contended that the statute of 1855 violated the immunity clause of the Constitution (see 46 Barb., at p. 662). Subsequent to these early cases, the lower courts have quite consistently applied the mandate of section 5 of article IX and have held the county immune from liability for the negligent acts of the Sheriff and his deputies, committed in the course of their official duties (Thomas v. Ontario County, 187 Misc. 711 [1946]; Mentillo v. County of Cayuga, 2 Misc 2d 820, 821 [1956]; Schnitzer v. County of Erie, 8 Misc 2d 989 [1957]; *121 Isereau v. Stone, 3 A D 2d 243, 247 [1957]; see, also, Hawkins v. Dominy, 18 Misc 2d 221, 222).
It thus appears that the compelling mandate of the constitutional provision is crystal clear, stating in the plainest language that " the county shall never be made responsible for the acts of the sheriff.” (Emphasis supplied.) That provision has endured to the present day despite attempts at repeal in both the 1867 and 1938 constitutional conventions. The convention delegates in 1938 knew that in 1929 the Legislature had enacted former section 12-a of the Court of Claims Act; nevertheless it retained the constitutional provision, preserving the immunity of the county for the acts of the Sheriff. It was also known that the duties of the Sheriff have from ancient days embraced the same duties as those of police officers (see Proposed Code C’rim. Pro. [1850], § 154; County Law, § 650), in which capacity defendant Zambón acted when he proximately caused plaintiff’s injuries. It is therefore my opinion that defendant County of Oneida is immune from liability in this case for the negligent acts of its Deputy Sheriff.
Plaintiff argues on this appeal, in reliance on the case of Sawyer v. Town of Southport (6 A D 2d 553), that the meaning of the immunity provision is ambiguous and doubtful, and hence such legislative enactments as subdivision 1 of section 53 of the County Law override the constitutional mandate. Neither the Legislature nor the courts, because of equitable considerations or otherwise, have the right to override the constitutional mandate of section 5 of article IX. It cannot reasonably be said that because the immunity provision is found in a section which made the office of Sheriff an elective one, or because the provision became a part of the Constitution without the benefit of exposition or debate, its plain meaning is rendered obscure. Even if it were a necessary prerequisite, the debate lacking in 1821 was supplied in 1867; and section 8 of article IV (N. Y. Const., 1821; now art. IX, § 5), the section dealing with Sheriffs, was the only natural place to put the immunity provision. Moreover, the fact pattern in Sawyer is quite different. There a person had been “ lawfully commanded to aid ” the Sheriff, and the latter’s act was strictly in accord with law. The statute in that case created a liability without fault.
*122 Several members of the court have taken the position that the immunity provision is inapplicable to the instant case, and hence the County of Oneida is liable for the negligent acts of Deputy Sheriff Zambón, committed in the course of his official duties. It is reasoned by them that the “ ancient” immunity ‘ ' provision protects comities from the consequences of wrongful performance by Sheriffs of the historic, conventional duties of the centuries-old office of Sheriff ”. Such interpretation of the constitutional provision is entirely correct, but it does not follow therefrom that the county is rendered liable in the instant case.
It is a matter of historical fact (see Problems Relating to Home Rule and Local Grovernment [N. Y. State Const. Convention Committee, 1938, Vol. XI], pp. 124-130), which has been recognized judicially (Coyles v. Hurtin, 10 Johns. 85, 87 [1813], opinion per Keut, Ch. J.; Pearce v. Stephens, 18 App. Div. 101, 104-105, affd. 153 N. Y. 673), and statutorily (see Proposed Code Crim. Pro. [1850], § 154; County Law, § 650), that the ‘ ' historic, conventional duties of the centuries-old office of Sheriff” have from time immemorial included police duties. As the court stated in the Pearce case (supra, pp, 104-106): “ It is the duty of a sheriff to act as a conservator of the peace within his county * * *. His duties are, in a large measure, in kind the same as are imposed upon police officers and he necessarily exercises police powers * * * duties devolved upon him by the common law ”. Defendant Zambón in this case was engaged in the performance of the present-day counterpart of the Sheriff’s traditional police duties when he negligently caused plaintiff’s injuries, and hence the county may not be held responsible.
In the Chief Judge’s opinion it is asserted that the immunity provision should be construed in the light of the provision dealing with the Sheriff’s official bond found in an earlier sentence of section 5 of article IX. It is reasoned therefrom that since the ‘ ‘ negligent handling of a county-owned automobile ” by a Deputy Sheriff does not constitute “ misfeasance or malfeasance ” of the sort for which recovery may be had under his official bond, such negligent acts are excluded from the ambit of the immunity provision.
*123 In the first place, when the convention in 1821 added the immunity clause to section 8 of article IV (now art. IX, § 5) after the provision relating to the Sheriff’s security, it could only have meant by the word ‘ ‘ But ’ ’ that the county was immune regardless of that security. Secondly, I cannot agree with the basic assumption that the ‘ ' negligent handling of a county-owned automobile ” does not constitute misfeasance redressable against the surety. That issue does not appear to have been previously determined in this jurisdiction. However, the prevailing weight of authority in other jurisdictions which have passed upon the question holds that the surety would be liable under its bond for the negligent use of a vehicle by a Sheriff or peace officer in the course of performing his official duty (Duran v. Mission Mortuary, 174 Kan. 565, 578-580; Jones v. Buckelew, 247 Ala. 475; Rutledge v. Small, 192 S. C. 254, 260-261; United States Fid. & Guar. Co. v. Samuels, 116 Ohio St. 586; Curnyn v. Kinney, 119 Neb. 478; Fidelity & Cas. Co. v. Boehnlein, 202 Ky. 601). Thus in the last-cited case the court stated (p. 603): “By all the authorities, an official bond for the faithful performance of official duties covers misfeasance, malfeasance, and nonfeasance, as counsel for appellant concede, but their argument assumes negligence in the operation of a motorcycle by a policeman is none of these. Such an assumption has neither authority nor reason to support it.”
To hold the county liable in this case for the acts of the Sheriff would require us to cast aside the mandate of the Constitution and shift the liability from the surety to the county, which the Constitution directs shall never be made responsible. This may not be done without recourse to a constitutional amendment.
In addition to the substantive questions discussed above, the four defendants raise questions as to certain evidentiary rulings of the trial court which are not of sufficient consequence to merit comment. Accordingly, the judgment appealed from should be affirmed as to defendants Meeker, Mastrangelo and Zambón, with costs to the plaintiff, and reversed as to defendant County of Oneida, with costs to the county against the plaintiff.