■ ADELYN J. CRAWFORD, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 58104-A.)—Appeal from so much of an order of the Court of Claims, entered May 11, 1976, as denied a motion to dismiss a claim against the State of New York. Following claimant's arraignment on a charge of malicious mischief and forcible entry, the Justice of the Peace ordered claimant to be psychiatrically evaluated at Grasslands Hospital. It was determined that she was incapable of defending herself due to mental incompetency. Claimant was certified by the Dutchess County Court to be mentally ill pursuant to the Mental Hygiene Law and ordered committed on April 6, 1955 to Harlem Valley State Hospital, where she remained until discharged on January 24, 1973. Claimant filed a claim against the State and others on December 27, 1973 wherein she set forth causes of action sounding in (a) false imprisonment, (b) negligence in caring for and diagnos-

ing her condition, (c) fraud in refusing to honor a promise of discharge in 1966, and (d) wrongful interference with her right to pursue a business transaction. On April 13, 1976 the Court of Claims dismissed the claim as to all named defendants except the State, but denied the State's motion for summary judgment dismissing the claim. This appeal ensued. Before discussing the merits, we feel constrained to review briefly the evolution of the statutory scheme applicable to the factual pattern herein. Such review is required because the earliest court order relied upon by the State to justify *retention of claimant is dated November 29, 1968, 13 years and 7 months* after the order of commitment. Such a review necessarily begins with a statement of the law applicable to involuntary commitments in 1955. Article 5 of the Mental Hygiene Law (L 1927, ch 426, amd by L 1933, ch 395, § 6) did not require the authorities of a State hospital to periodically obtain orders of retention entailing a requisite review of a patient's mental condition. The order of commitment of April 6, 1955 did not limit the duration of confinement, nor did it require the custodial institution or any other entity to examine and report to any court or agency regarding the condition of the confined individual. Law reflects climate and attitudes, and, unfortunately, until the law was enlighteningly amended, involuntary admittees to mental hospitals were solely dependent upon family members and friends to petition for their release. It was not until 1964 that the Mental Hygiene Law was amended to require that "3. If the director of a hospital, in which a patient is retained * * * shall determine that the condition of such patient requires his further retention in a hospital, he shall, if such patient does not agree to remain in such hospital as a voluntary or informal patient, apply during the period of retention authorized by the last order of the court * * * for an order authorizing further continued retention of such patient." (Mental Hygiene Law, § 73, added by L 1964, ch 738, § 5.) This 1964 amendment, however, had no application to persons confined in mental institutions prior to its effective date, September 1, 1965. To correct this statutory defect, section 73 was amended (L 1968, ch 1050, § 3) so as to insert in section 73 the requirement that as to those committed prior to September 1, 1965, an application for a further retention order be made *"within one year after April first, nineteen hundred and sixty-eight* or during the period of retention authorized by the last order of the court". (Emphasis added.) The present law (Mental Hygiene Law, § 31.33, subd [d]) repealed the 1964 enactment, as amended in 1968, but continues the requirement of periodic application for retention orders if the director of the confining institution determines that the condition of the patient requires such action. From this review, we conclude that the State had no statutory duty to apply for further retention orders of claimant from April 6, 1955, the date of commitment, to 1964, and thereafter, was only required to seek such an order within one year after April 1, 1968. This the State did, and there are no allegations, express or inferable, in claimant's claim that the order of commitment in 1955 and the subsequent orders of further retention, obtained in 1968, 1969, 1970 (24 months), were invalid on their face or that the courts lacked jurisdiction of the subject matter or claimant's person *(Ferrucci v State of New York,* 42 AD2d 359, 361, affd 34 NY2d 881). Consequently, claimant's cause of action for false imprisonment must be dismissed *(Lauer v State of New York,* 57 AD2d 673; *Ferrucci v State of New York, supra).* Claimant's reliance on *O'Connor v Donaldson* (422 US 563) is misplaced. There is no allegation herein that the State acted intentionally or maliciously to deprive claimant of her rights. Such an allegation was clearly deemed essential by the court in *O'Connor.* Claim-

ant's second cause of action based on the alleged negligence of the State's doctors, their faulty diagnosis of her mental condition and their unsound methods of treatment, must also be dismissed. The operation of a State institution is clearly governmental and subject to governmental and administrative decisions and the State has not waived its immunity from liability resulting from said decisions *(Ferrucci v State of New York, supra; Young v State of New York,* 40 AD2d 730, 732, mot for lv to app den 31 NY2d 646). The frequency or quality of care being a governmental function, liability will not attach for improper medical decisions *(Bellows v State of New York,* 37 AD2d 342, 344). Claimant's third and fourth causes of action are without merit and require no discussion. Order insofar as appealed from reversed, on the law and the facts, without costs, and claim dismissed. Kane, J. P., Mahoney, Main, Larkin and Mikoll, JJ., concur.