JEROME WILSON, an Incompetent, by his Committee, MARY WILSON HALL, et al., Respondents -Appellants, v ROBERT SPONABLE, as Sheriff of Cayuga County, Appellant-Respondent.

JEROME WILSON, an Incompetent, by his Committee, MARY WILSON HALL, et al., Respondents-Appellants, v COUNTY OF CAYUGA et al., Appellants-Respondents.

Fourth Department, May 27, 1981

1

2

APPEARANCES OF COUNSEL

*Bond, Schoeneck & King (S. Paul Battaglia* of counsel), for appellants-respondents.

*David P. Elkovitch* for respondents-appellants.

OPINION OF THE COURT

CARDAMONE, J.

May a Sheriff or a county be held vicariously liable for

the acts of Sheriff's deputies in the performance of their criminal duties (e.g., guarding prisoners in a county jail, and as distinct from their civil functions) is the question raised in the case before us. We conclude that neither may be held vicariously liable.

## BACKGROUND

The litigation arises because plaintiff, Jerome Wilson, a 23 year old with a history of psychiatric problems, attempted to commit suicide while confined in the Cayuga County Jail in Auburn, New York. He had been arrested on January 21, 1979 in connection with the stabbing death of his girlfriend and had been placed temporarily in the Auburn City Jail. Later he was moved to the Cayuga County Jail. Prior to his arrest Wilson had attempted to commit suicide by slashing one wrist and was wearing a gauze bandage on his wrist when put in jail. Before he was transferred to the county jail, the District Attorney of Cayuga County called at home one of the defendants, Sheriff Sponable, to advise him that Wilson should be kept under surveillance because he had tried to hurt himself. The Sheriff phoned the jail and gave instructions to put a guard on him. Wilson was placed in a cell on the first floor where he could be constantly watched, but at 2:00 P.M. he was transferred to the fourth floor where six other inmates were confined. At 11:00 A.M. the next morning, Wilson attempted suicide by strangling himself with a piece of gauze tied to the cell bars. The attempt was thwarted when he was discovered by Jailer Thomas Cunningham, who called for help. Another jailer cut the bandage off and rendered resuscitation. As a result of this attempted suicide and the resultant oxygen deprivation, plaintiff was in a coma for 13 weeks. In April, 1979 Jerome Wilson's mother, Mary Wilson Hall, was appointed as committee of the person and property of Jerome Wilson. In September, 1979 Wilson was adjudged incompetent to stand trial and committed to the custody of the Commissioner of Mental Hygiene, his psychiatrists noting intellectual impairment, slurred speech, loss of memory and unsteady gait. In June, 1979 counsel for Jerome Wilson and Frances Temoney, the mother of Wilsons' daughter, Onda Rochelle Wilson, caused a sum-

mons and complaint to be served on Sheriff Sponable (designated as Action No. 1). The complaint alleged that the Sheriff was negligent in permitting Jerome Wilson to remain unattended, knowing of his suicidal tendencies. Plaintiffs thereafter served a complaint against the County of Cayuga and Jailers Thomas Cunningham and Frank Thomas (Action No. 2). In the second action the plaintiffs alleged that Thomas and Cunningham breached a duty owed to Wilson by negligently searching him for dangerous articles, i.e., his gauze bandages, and by carelessly failing to make cell checks on him. Plaintiffs also alleged in Action No. 2 that the county was liable to plaintiff for understaffing the county jail, failing to provide special housing for mentally disturbed prisoners; and failing to contract with any hospital for the care of prisoners in need of psychiatric care.

All defendants moved for summary judgment. The motions for summary judgment by Cunningham and Thomas were denied and, on this appeal, that ruling is not contested. Sheriff Sponable and the County of Cayuga appeal from that part of the order denying them summary judgment in part, and plaintiffs cross-appeal.

### SHERIFF'S LIABILITY

█ Considering first the grounds for liability against the Sheriff, it is well settled that a Sheriff is not vicariously liable for the acts of deputies performing criminal duties *(Barr v County of Albany,* 50 NY2d 247, 257). Since guarding prisoners accused of crime is a criminal, as opposed to a civil, function *(Matter of Flaherty v Milliken,* 193 NY 564, 569-570; *D'Amico v City of Rochester,* 79 AD2d 1091), the Sheriff could not be vicariously liable for the deputies' misfeasance.

The complaint here alleges that Sheriff Sponable himself was negligent because "he, the defendant, permitted Jerome Wilson to remain unattended, unobserved and unguarded * * * and failed to provide necessary care and protection for Jerome Wilson, even though the defendant and his agents and employees knew, or should have known of Jerome Wilson's suicidal tendencies."

Section 500-c of the Correction Law[1] which imposes on the Sheriff the responsibility of keeping prisoners safe, provides in pertinent part: "Each sheriff, except the sheriff of the city of New York and the sheriff of the county of Westchester, shall have custody of the county jails and *shall receive and safely keep*, in the county jail of his county, *every person lawfully committed to his custody* for safekeeping, examination or trial, or as a witness, or committed or sentenced to imprisonment therein, or committed for contempt" (emphasis supplied). Moreover, it has been held that a Sheriff may be liable if his negligence contributed to a mentally ill prisoner's suicide (see *Lavigne v Allen*, 36 AD2d 981). The Sheriff argues that he cannot be held responsible for plaintiff's safety, because "[h]e had delegated supervision and control of the jail to a lawfully appointed deputy." This argument is without merit since the Sheriff cannot be delegating authority to his deputies absolve himself of a statutory duty. The Sheriff further contends that the issue is not whether the complaint states a cause of action, but whether there are triable issues of fact since the only evidence in the record is that the Sheriff did order his deputies to guard Wilson. However, this so-called "evidence" is nothing more than an affidavit and an examination before trial of Sheriff Sponable himself. Whether the Sheriff did or did not order supervision of the plaintiff is a question of credibility for the finder of fact, not the court, to resolve *(Capelin Assoc. v Globe Mfg. Corp.*, 34 NY2d 338, 341), particularly where the movant relies on its own self-serving, exculpatory affidavits *(Koen v Carl Co.*, 70 AD2d 695). Moreover, assuming the truth of the Sheriff's assertions, whether the directions for supervision that he gave were reasonable is also a question for a finder of fact (see *Andre v Pomeroy*, 35 NY2d 361, 369-370). "The very question of whether the defendant's conduct amounts to 'negligence' is inherently a question for the fact-trier in all but the most egregious instances" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C3212:8, p 430). The facts demonstrate that Wilson was left alone long enough to remove his bandages, tie them around

---

1. This statute has been amended effective January 1, 1981. However, the amendment is not relevant on this appeal.

his neck and cell, and choke himself for a period of time sufficient to cause permanent injuries. The record contains unresolved questions as to how long Wilson was left alone and whether, in leaving him alone for that amount of time, the jail staff contravened the orders of the Sheriff. Thus, "further development of relevant facts" is in order *(Zaldin v Concord Hotel*, 48 NY?d 107, 115). A jury could find that the jail staff were properly following the Sheriff's orders as given, but that the orders themselves were inadequate and the proximate cause of the plaintiff's injuries (see *Lavigne v Allen*, 36 AD2d 981, *supra)*.

### COUNTY'S LIABILITY FOR ITS OWN NEGLIGENCE

Turning next to the liability asserted against Cayuga County, the plaintiffs allege that the county is liable to them because of its negligence in: (a) understaffing the jail; (b) failing to provide special housing for prisoners with mental problems; and (c) failing to contract with any hospital or clinic to care for prisoners in need of psychiatric care and/or constant supervision. Special Term granted the county's motion for summary judgment as to the first paragraph, but denied it as to the latter two. The county should have summary judgment on all three claims.[2]

The county argues that it is "immune" from liability in connection with the above, since they involve governmental, discretionary decisions. As the plaintiffs point out, section 8 of the Court of Claims Act makes the State liable for torts to the same extent that private corporations would be. This waiver of immunity was held to apply to the political subdivisions of the State as well in *Bernardine v City of New York* (294 NY 361, 365). Some measure of nonliability has been retained. At times, this nonliability may be characterized as "immunity" for governmental acts. The Court of Appeals has made it clear though, that the State's nonliability arises not because of a distinction between governmental and proprietary functions, but because "the law of negligence does not impose liability upon a government or, for that matter, upon an individual unless there is a breach

---

2. The issue is really whether the complaint states a cause of action, and thus it would be more properly raised on a motion to dismiss. Nevertheless, the issue may be considered now (see Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C3212:20, p 439).

of a duty." *(Pratt v Robinson*, 39 NY2d 554, 563; see, also, *Southworth v State of New York*, 62 AD2d 731, 740-741, affd 47 NY2d 874.) The county's immunity argument is thus more properly characterized as one of duty, i.e., whether the county owed the plaintiffs a duty with respect to staffing the jail and providing psychiatric care and facilities.

The county does have the duty to "maintain" the jail (County Law, § 217) and to provide a jail physician (Correction Law, § 501). Of course, there are no express requirements that a county provide a specified number of jail guards, special facilities for suicidal patients, or psychiatric care from outside agencies. The decisional law has established that the State has a duty to use reasonable care to prevent suicidal mental patients in State hospitals from killing themselves *(Hirsh v State of New York*, 8 NY2d 125, 127, citing *Martindale v State of New York*, 269 NY 554, and *Gries v Long Is. Home*, 274 App Div 938; see *Comiskey v State of New York*, 71 AD2d 699; *Mochen v State of New York*, 57 AD2d 719; *Fernandez v State of New York*, 45 AD2d 125; *Gioia v State of New York*, 22 AD2d 181, 185). The duty of "reasonable care" does not require supervision 24 hours per day *(Comiskey v State of New York, supra; Mochen v State of New York, supra; Brown v State of New York*, 56 AD2d 672, affd 44 NY2d 1006; *Horton v Niagara Falls Mem. Med. Center*, 51 AD2d 152, 156, n 1; *Fernandez v State of New York, supra)*. The scope of the State's duty is the standard *Palsgraf* formulation;[3] thus the State is liable for "hazards reasonably to be foreseen" and "risks reasonably to be perceived" *(Flaherty v State of New York*, 296 NY 342, 346; see, also, *Brown v State of New York, supra; McBride v State of New York*, 52 Misc 2d 880, affd 30 AD2d 1025). The duty to protect a suicidal person from killing himself has been extended to include the Sheriff (see *Lavigne v Allen*, 36 AD2d 981, *supra)*, as well as those in charge of a reform school (see *McBride v State of New York, supra)*.

Decisional law dealing with mental patients and pris-

---

3. In *Palsgraf v Long Is. R. R. Co.* (248 NY 339, 344), the Court of Appeals held that "The risk reasonably to be perceived defines the duty to be obeyed."

oners clearly establishes that the State has a duty of supervision with respect to suicidal persons in its care and custody. The plaintiffs, however, would expand that obligation to encompass a duty to provide separate facilities, extra staff, and psychiatric care. No basis exists for extending the duty to include these additional benefits. On the contrary, case law mandates the opposite result. While there is a duty to supervise a suicidal patient, "[t]he frequency and amount of psychiatric treatment or care to be furnished to a prisoner is an administrative decision, and the type of treatment to be afforded him is a governmental function" and thus the frequency, amount, and type of treatment furnish no basis for a cause of action *(Bellows v State of New York*, 37 AD2d 342, 344). No recovery may be had because of alleged wrongful diagnosis and treatment *(Crawford v State of New York*, 60 AD2d 729, affd 47 NY2d 884; *Ferrucci v State of New York*, 42 AD2d 359, affd 34 NY2d 881; *Young v State of New York*, 40 AD2d 730; cf. *Bartlett v State of New York*, 52 AD2d 318). Moreover it has been held that there can be no claim based on failing to provide sufficient staff at a State hospital where the institution provided all the care it could within "legislatively determined budgetary limits" *(Young v State of New York*, 40 AD2d 730, 732, *supra;* see, also, *Riss v City of New York*, 22 NY2d 579, 581-582, noting that the amount of police protection which may be provided is limited by the resources of the community).

In *Florence v Goldberg* (44 NY2d 189), the Court of Appeals held that where a municipality voluntarily undertook the task of providing school-crossing guards, thereby causing a parent to rely on such protection, the municipality could be liable for failing to perform that service without notifying the school principal as required by police regulations. Pertinent here, although stated as dicta, was this comment (pp 197-198) : "In passing, we caution, however, that a municipality cannot be held liable solely for its failure to provide adequate public services. The extent of public services afforded by a municipality is, as a practical matter, limited by the resources of the community. Deployment of these resources remains, as it must, a legislative-executive decision which must be made without the benefit

of hindsight". This observation refutes plaintiffs' contention and establishes that the extent of public services for the care of suicidal prisoners is limited by the resources of the community. The legislative body of Cayuga County was charged with responsibility for providing a multitude of public services, only one of which was guarding prisoners. Deployment of the county's resources is a legislative-executive decision, and it cannot be found negligent for the way in which it chose to allocate its funds.

Similarly, in *Pratt v Robinson* (39 NY2d 554, *supra*), the Court of Appeals held that the city, school district and school bus company have no duty to route a bus so as to prevent a child from having to cross a dangerous intersection. The court observed (p 563) that there was no statutory or common-law duty to bus the child closer to her home; and that while the school had undertaken to provide bus service, it had not undertaken to provide door-to-door service. Its duty was to perform only what it had undertaken in a reasonable and prudent manner. Here, too, separate facilities and contracts with psychiatric clinics may be desirable, but the county may not be cast in damages for its failure to legislate them. In general, legislative-executive decisions may not render the State liable in damages (see *Tomassi v Town of Union*, 46 NY2d 91, 97; *Office Park Corp. v County of Onondaga*, 64 AD2d 252, affd 48 NY2d 765; *Southworth v State of New York*, 62 AD2d 731, *supra*). In *Office Park Corp. v County of Onondaga (supra, pp 258, 259)*, we drew a distinction between the "lawful exercise of sovereign power in the designing and planning" of a program, for which no liability attaches, and "an improper mode, means or method * * * in carrying the plan into execution" for which the State could be liable. In short, there is no duty to legislate, but a scheme once drawn up may render the State liable, if carried out negligently. Therefore, the county is entitled to summary judgment on plaintiff's allegations of direct negligence.

### COUNTY'S VICARIOUS LIABILITY FOR THE NEGLIGENT ACTS OF DEPUTY SHERIFFS

Finally, it is alleged that the county may be vicariously liable for the negligent acts of Sheriff's deputies. This assertion is based upon the claim that the State's waiver of

sovereign immunity (Court of Claims Act, § 8) permits the application of the traditional tort doctrine of *respondeat superior* to impose liability on a county for the tortious acts of its Sheriff's deputies. Such theory has never been adopted by this court *(Isereau v Stone,* 3 AD2d 243; *Sheridan v Major,* 15 AD2d 870; *Perry v Custodi,* 52 AD2d 1063; *Matter of Delosh v City of Syracuse,* 64 AD2d 814). In the cited cases we held that the liability of a Sheriff's deputies would not be imputed to the county even though the acts were committed by the deputies in the course of their employment. It is now claimed by the dissenters that these holdings have been thrown in doubt by the recent decision of the Court of Appeals in *Barr v County of Albany* (50 NY2d 247).

As noted in *Foyster v Tutuska* (25 AD2d 940) "the liability of a Sheriff or county for the negligent acts of a Deputy Sheriff has presented troublesome legal issues." By constitutional provision (NY Const, art XIII, § 13, subd [a]) a county cannot be made responsible for the acts of the Sheriff. By case law this immunity has been extended to acts of the Sheriff's deputies as well. In some of these latter instances the rationale for extending the immunity is drawn from an interpretation of the constitutional mandate *(Perry v Custodi,* 52 AD2d 1063, *supra).* The Third Department noted the anomaly of claiming that the county had no responsibility for the acts of the Sheriff but could, at the same time, be vicariously liable for the acts of his deputies. It stated: "The Sheriff, with his multitude of duties, can obviously function only with the aid of deputies. To hold that immunity exists only when the Sheriff personally performs an act is contrary to common sense, and, in our view, was not the intent of the immunity provision of the Constitution." *(Snow v Harder,* 43 AD2d 1003.) We have stated on more than one occasion that the constitutional immunity extends to protect a county from liability for the acts of a Deputy Sheriff *(Perry v Custodi, supra; Matter of Delosh v City of Syracuse, supra).*

Logic aside, however, it is now clear that there is no constitutional mandate shielding the county from responsibility for the acts of Sheriffs' deputies. In *Barr v County of Albany* (50 NY2d 247, 257) a unanimous Court of Appeals held "that a county may, by legislative enactment, assume

responsibility for the tortious acts of its Deputy Sheriffs as distinguished from the acts of the Sheriff himself". In *Barr* a local law deemed the tortious acts of "any employee of the county in the office of the sheriff" an act of the county and made any damages resulting therefrom a county liability. The existence of this local law was described by the Court of Appeals as a "critical distinction" separating *Barr* from the previous line of cases supporting immunity (50 NY2d, at p 256).

Since the State Constitution does not prohibit the assumption of liability for negligent acts of Deputy Sheriffs the question becomes, in this case, whether vicarious liability may be judicially imposed on a county or whether it may only be voluntarily assumed by it. A brief review of history puts the matter in clearer focus. Under the common law in England, the Sheriff was an agent of the Crown. In colonial days in New York he was appointed by the State (NY Const of 1777, § XXVI). The Sheriff was classified as a State officer, the executive arm of the sovereign within the county (54 NY Jur, Sheriffs, Constables, and Police, §§ 35, 38). At the Constitutional Convention of 1821 the formerly appointive office of Sheriff was made elective. In return for the Sheriff's elective status within the county, the county obtained immunity from his acts. The effect of this constitutional provision was to immunize the counties from the negligent acts of the Sheriff *(Commisso v Meeker,* 8 NY2d 109). Since the Sheriff's deputies were agents of the Sheriff and had no independent common-law agency relationship with the county *(Matter of Flaherty v Milliken,* 193 NY 564, 568, *supra),* the constitutional bar effectively immunized the counties from the negligent acts of the Deputy Sheriffs as well as those of the Sheriff.

It is in this historical context that *Barr (supra)* must be read. The Court of Appeals there held that the immunity clause does not extend to acts of the Deputy Sheriffs as distinguished from acts of the Sheriff himself. A reading of the constitutional clause makes that view clear—no reference is made to Deputy Sheriffs. The Court of Appeals did *not,* however, impose liability upon the county predicated on a common-law agency relationship with Deputy Sheriffs that has never—and still does not—exist. The court merely held that because the Constitution did not prohibit it, the coun-

ties were free to assume liability by local law for the negligent acts of Deputy Sheriffs, if a county chose to do so. Cayuga County has not done so. Therefore, no basis presently exists for us judicially to impose vicarious liability against Cayuga County for the allegedly negligent acts of the Deputy Sheriffs in this case.

Accordingly, the order appealed from should be modified in accordance with this opinion and as modified it should be affirmed.

SIMONS, J. (dissenting in part). We dissent from the majority opinion insofar as it holds that a county is not vicariously liable for the tortious acts of the employees maintaining its jail. The State would be vicariously liable for the negligence of its employees if Jerome Wilson had injured himself while a prisoner in State prison or in the State Police barracks (see *Gioia v State of New York*, 16 AD2d 354, 356-357, app from remand 22 AD2d 181, 185, and cases cited therein), and a municipality similarly would be liable if he had done so while a prisoner in a municipal jail *(O'Grady v City of Fulton*, 4 NY2d 717; *Dunham v Village of Canisteo*, 303 NY 498). The same rule should apply to counties. It does not because of an anachronistic rule of law which holds that neither the Sheriff nor the county is liable for the tortious acts of Deputy Sheriffs performing criminal duties.

The rule exempting the Sheriff from personal liability for acts of his deputies performing criminal functions was established by the Court of Appeals (see *Barr v County of Albany*, 50 NY2d 247, 257, and cases cited therein). The rule exempting the county from liability was created by this court *(Isereau v Stone*, 3 AD2d 243; see *Matter of DeLosh v City of Syracuse*, 64 AD2d 814; *Perry v Custodi*, 52 AD2d 1063; *Foyster v Tutuska*, 25 AD2d 940). Although it has been accepted by at least one other appellate court (see *Snow v Harder*, 43 AD2d 1003), it has never been adopted by the Court of Appeals[1] and we should not perpetuate it.

The rule has been justified on two grounds: (1) because Deputy Sheriffs are not agents of the county and (2) because the State Constitution provides that a county shall

---

1. In *Commisso v Meeker* (8 NY2d 109), three Judges thought that the county enjoyed a constitutional immunity for the torts of Deputy Sheriffs.

not be liable for the acts of the Sheriff and the immunity contained in that provision has been extended by judicial interpretation to Deputy Sheriffs. Since we believe that the deputies are agents of the county and that the county enjoys no such constitutional immunity for acts of deputies performing criminal functions, we would overrule our prior decisions and hold that plaintiffs have stated a cause of action against the county based upon its vicarious liability for the negligent acts of Wilson's jailers, defendants Cunningham and Thomas.

The *Isereau* rule was based on the Court of Appeals decision in *Matter of Flaherty v Milliken* (193 NY 564) which held that Sheriffs' deputies performing civil functions were not subject to the Civil Service Law. The Court of Appeals reasoned that since a Sheriff was liable under traditional agency rules for the negligence and misconduct of deputies performing civil functions, he should not be limited by the provisions of the Civil Service Law in appointing them (see, also, *Matter of Grifenhagen v Ordway*, 218 NY 451; *Matter of O'Brien v Ordway*, 218 NY 509). Conversely, the court stated that a Sheriff was not liable for the acts of his deputies while they were performing criminal matters because in those cases the deputies were "in the service of the public". Relying upon that statement, we reasoned in *Isereau* (3 AD2d 243, *supra)* that since the criminal deputies were in the service of the public, they could not be in the service of the county. Thus, the rule was stated that the county was immune from liability for the acts of deputies performing criminal functions.

The source of the *Flaherty* dictum (193 NY 564, *supra)* is lost in antiquity, and it is not clear what the court meant by it. In the broad sense, all public officers are "in the service of the public". That status does not mean, however, that they are free agents, existing in a state of nature, or that their principals are any less liable for their acts. If the county is required by law to maintain and support a jail, and it is (County Law, § 217), and if the county's Deputy Sheriffs are required by law to staff it, and they are (Cor-

---

The judgment against the county was dismissed, however, only because a fourth Judge found the evidence of negligence insufficient. Three Judges would have affirmed the judgment against the county based on the negligence of the Deputy Sheriff.

rection Law, § 500-c), it would seem that there is sufficient connection between the parties to make the county liable in tort for the acts of the deputies caring for its prisoners (County Law, § 53, subd 1). But if the relationship of jailer and jail owner is not sufficient to establish vicarious liability, then the language of section 50-j of the General Municipal Law is broad enough to make the county liable for the deputies' torts.[2]

This agency relationship notwithstanding, we have held that the county's immunity is also based on constitutional grounds. Because the Constitution provides that the county shall not be liable for acts of the Sheriff, the reasoning goes, and deputies are employees of the Sheriff, the constitutional provision also exempts the county from liability for the acts of the Sheriff's deputies *(Matter of DeLosh v City of Syracuse, 64 AD2d 814, supra; Perry v Custodi, 52 AD2d 1063, supra; Snow v Harder, 43 AD2d 1003, supra; Isereau v Stone, 3 AD2d 243, supra).*[3] Finding the immunity was of constitutional dimensions, we held that the courts were powerless to change it (see *Perry v Custodi, supra;* and see opn of Judge FROESSEL speaking for three Judges in *Commisso v Meeker,* 8 NY2d 109, 121, 123).

The rule is that deputies performing criminal functions are not in the employ of the Sheriff, however, and if that is so, then a county should not be entitled to use its exemption against liability for acts of the Sheriff to avoid liability for acts of the deputies. Moreover, the constitutional rationale for our rule clearly has now been eliminated, for the Court of Appeals recently and expressly held that article XIII does not protect a county from liability for acts of Deputy Sheriffs *(Barr v County of Albany,* 50 NY2d 247, 256-257, *supra).* In *Barr* the county assumed liability by enactment of a local law, but in other earlier cases vicarious liability had been imposed on the county by statute (see, also,

---

2. The Sheriff's status as a constitutional officer does not affect the county's liability for his deputies' acts (see *Drake v City of Rochester,* 74 AD2d 996, affg 96 Misc 2d 86 [involving county liability for acts of an Assistant District Attorney]).

3. The pertinent language is contained in article XIII (§ 13, subd [a]) of the New York State Constitution: "Sheriffs shall hold no other office. They may be required by law to renew their security, from time to time; and in default of giving such new security, their offices shall be deemed vacant. But the county shall never be made responsible for the acts of the sheriff."

*McMahon v Michaelian*, 30 NY2d 507, affg on opn below 38 AD2d 60; *Commisso v Meeker*, 9 AD2d 865; *Sawyer v Town of Southport*, 6 AD2d 553; *Reck v County of Onondaga*, 51 Misc 2d 259; see General Municipal Law, § 50-j). In either case, however, it is now clear that the county's immunity for the negligent acts of a Deputy Sheriff performing criminal functions cannot be derived from the Constitution because if it were, it could not be eliminated by statute or local legislation. That being so, we should now apply traditional rules of principal and agent to impose vicarious liability upon the county for the tortious acts of Deputy Sheriffs.

There is also an overriding policy reason not to extend the constitutional provision to exempt the county from liability for the torts of Deputy Sheriffs and to hold the county liable. Although the Constitution exempts the county from liability for acts of the Sheriff, it requires that the Sheriff post security. Thus, the exemption works no hardship on the Sheriff's tort creditors, for they have recourse against his security to satisfy their claim. There is no such requirement, however, protecting the creditors of Deputy Sheriffs and this court's interpretation that the county is not vicariously liable for their torts leaves those in plaintiffs' position without security to satisfy their verdict, if they recover one. Surely, the drafters of the Constitution could not have intended that result and we should not allow it.

It follows that if the deputies are agents of the county in maintaining the jail, and if section 13 of article XIII of the New York Constitution does not exempt the county from liability for the deputies' torts, then the county should be vicariously liable because the State and its subdivisions have waived immunity from suit for the tortious acts of their agents (Court of Claims Act, § 8; *Thomas v Consolidated Fire Dist. No. 1 of Town of Niskayuna*, 50 NY2d 143, 147; *Bernardine v City of New York*, 294 NY 361, 365).

DILLON, P. J., and MOULE, J., concur with CARDAMONE, J.; SIMONS and DOERR, JJ., dissent in part and vote to modify in accordance with an opinion by SIMONS, J.

Order modified, on the law, in accordance with opinion by CARDAMONE, J., and as modified affirmed, without costs.