■ MARTIN GORDON, Respondent, v CITY OF NEW YORK, Appellant.—In an action to recover damages for personal injuries, the defendant appeals from a judgment of the Supreme Court, Kings County (Krausman, J.), entered February 13, 1985, which, upon a jury verdict, is in favor of the plaintiff and against it in the principal sum of $1,000,000.

Judgment reversed, on the law, with costs, and complaint dismissed.

On October 19, 1977, the plaintiff was arrested after the police observed him trying to break into a parked car in the vicinity of Fulton Street and Franklin Avenue. He was placed in a holding pen while awaiting arraignment in the Criminal Court of the City of New York, Kings County. Since the plaintiff was rejected by the other prisoners in the main holding pen and because he began to exhibit unusual behavior he was placed in a separation pen. Inasmuch as the plaintiff was regarded as a possible suicide, his belt and shoelaces were removed from him and a guard was placed outside the pen. The plaintiff thereafter began making loud noises, repeatedly

flushing the toilet and playing with the sink and hallucinating about God, Jesus Christ Super Star and being able to fly. The plaintiff then climbed the bars of his pen, and dived off head first, hitting his head on the toilet bowl and sustaining severe personal injuries. The corrections officer on duty started climbing the bars after the plaintiff on the outside of the pen and called for assistance, hollering "I got a possible hangup". He attempted to grab hold of the plaintiff, but was unable to reach him in time.

The plaintiff thereafter commenced an action against the city seeking to recover damages totaling $5,000,000 for conscious pain and suffering and future medical care resulting from alleged negligence in the supervision of him by the defendant's agent. It is the plaintiff's contention that notwithstanding the irrational behavior he exhibited and his mother's revelation of his history of psychiatric and emotional difficulties, the officers in whose custody the plaintiff was lodged took no steps whatsoever to have him examined by a psychiatrist or removed to a proper medical facility or to otherwise insure that he would not in any way cause injury or damage to himself while in custody. On December 14, 1984, the jury rendered a verdict in favor of the plaintiff and against the defendant in the principal sum of $1,000,000. The defendant's postverdict motion for an order dismissing the action or, in the alternative, reducing the jury award, was denied.

As the defendant concedes, a duty of ordinary care is owed by prison authorities to provide for the health and care of their charges (see, O'Grady v City of Fulton, 4 NY2d 717). However, the duty of reasonable care generally does not require supervision 24 hours per day (see, Wilson v Sponable, 81 AD2d 1, 7, appeal dismissed 54 NY2d 834, appeal discontinued 56 NY2d 594). Rather, the scope of the State's duty is the standard formulation that "[t]he risk reasonably to be perceived defines the duty to be obeyed" (Palsgraf v Long Is. R. R. Co., 248 NY 339, 344).

In the instant case, the plaintiff's underlying premise is that he should have been restrained and provided with medical care. The policy of the New York City Department of Corrections, however, authorizes the use of restraints only in an emergency situation and for a limited period of time. Generally, protective restraints are not to be used without the specific authorization of a physician. Only in the case of an emergency which requires the restraining of an inmate in order to prevent injury to himself or others or to prevent an escape, may a corrections officer use available means of re-

straint. In such case, a captain or other superior officer shall be notified immediately. The officer on duty thus must make a determination whether an emergency exists and, if so, whether the situation calls for the use of metal cuffs as a restraint.

Here, as a matter of law, the actions taken with regard to the plaintiff were entirely reasonable under the circumstances. Inasmuch as the plaintiff was being constantly monitored and there was nothing in the cell with which he could hurt himself, every possible precaution had already been taken to guard against what was reasonably foreseeable. The testimony of the Special Counsel to the New York City Commissioner of Corrections revealed that the mere fact that a prisoner is boisterous and is speaking irrationally is not uncommon in court pens and would not, in and of itself, warrant medical attention. "Whether hindsight reveals that greater precautions could have been taken to avoid the harm that eventuated is irrelevant if the injury could not reasonably have been foreseen at the moment the defendant engaged in the activity which later proves harmful" *(Danielenko v Kinney Rent A Car,* 57 NY2d 198, 204). On these facts, the plaintiff failed to set forth a prima facie case of negligence against the city and the complaint should have been dismissed. Brown, J. P., Weinstein, Niehoff and Eiber, JJ., concur.