## TEXAS EASTERN TRANSMISSION CORP. v. McDONALD et al.

### No. 10597.

United States Court of Appeals Seventh Circuit.

Oct. 1, 1952.

Arthur F. Melvin, Marion, Ill., Harold N. Lingle, Anna, Ill., for appellant.

W. D. Deakins, Jr., Houston, Tex., R. Wallace Karraker, Jonesboro, Ill., for appellee.

Before MAJOR, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal from a summary judgment for plaintiff on counts 1 and 2 of defendants' counterclaim which included four counts. The judgment rendered denied the plaintiff's motion for summary judgment on counts 3 and 4 of the counterclaim and did not dispose of the claim for injunctive relief presented by the complaint.

The defendants, Kenneth McDonald and Mabel McDonald, his wife, own the fee simple title to a rectangular tract of land, containing about 44 acres, in Williamson County, Illinois. They acquired their title to this land by purchase, in 1946, from Ethel McDonald Hill and W. N. Hill, the mother and stepfather of Kenneth McDonald. Underlying this land there was a large deposit of coal which could be removed by strip mining.

In 1942 the said Hills granted an easement to the Defense Plant Corporation to "lay, operate, renew, alter, inspect and maintain" the "Big Inch" and "Little Inch" pipelines across this tract of land. As the pipelines were located, they extended diagonally from the southwest to the northeast corner of the tract—a distance of 70 linear rods. The pipelines were parallel and approximately 35 feet apart. There is a road into the northwesterly half of the tract but the owners can reach their land in the southeasterly portion of the tract only by crossing the two pipelines.

The instrument granting the easement contained the following provisions:

"By the acceptance hereof, Grantee agrees to bury such pipelines so that they will not interfere with the cultivation or drainage of the land, and also to pay any and all damages to stock, crops, fences, timber and land which may be suffered from the construction, operation, renewal, alteration, inspection or maintenance of such pipelines.

"The Grantor or Grantors herein understand and acknowledge that the person securing this grant is without authority to make any agreement in regard to the subject matter hereof which is not expressed herein, and that no such agreement will be binding on Grantee."

The plaintiff, Texas Eastern Transmission Corporation, which had acquired the pipelines and easement rights of the Defense Plant Corporation by purchase, brought an action seeking an injunction against the defendants enjoining them from interfering with plaintiff's pipelines "by

disturbing the lateral, adjacent and subjacent support thereof by approaching and carrying on their strip mining operations within a distance less than twenty-five (25) feet from either side of said pipelines on the surface, together with necessary allowance for slope of the embankment from the surface to the bottom of the stripping operation, and from detonating explosives at a distance less than fifty feet from either of said pipelines, and from driving and operating heavy machines over and across the areas in which said pipelines are laid, * * * ." This means that the plaintiff was asking that the defendants be enjoined from removing the coal from a strip of their land 135 feet wide and 70 rods long, under, between and adjacent to said pipelines, or from that portion of their land southeast of the pipelines.

The plaintiff alleged that the defendants' ownership of the land was subject to plaintiff's easement and that the defendants were removing the coal from the land by strip mining methods and were threatening to destroy the support of and endanger the pipelines by removing the surface dirt and coal from beneath and adjacent to the pipelines by strip mining methods, by detonating explosives so near the pipelines as to endanger them and their support, and also by driving and operating heavy vehicles and machinery over the pipelines in a way that threatened injury to them.

In addition to their answer the defendants filed a counterclaim in four counts. Each count alleged that a deposit of coal existed on said land and that the defendants at the time they purchased the land knew of the coal deposits and purchased the land for the purpose of mining the coal by the strip mining method. Counts 1 and 3 alleged that the defendants' grantors had been told by agents and representatives of the Defense Plant Corporation, the original grantee of the easement, that the maintenance and operation of the pipelines would not in any manner interfere with the mining, removal and sale of the coal underlying the surface of all of defendants' land; that defendants' grantors, in reliance on such representations, executed the grant of the easement which they would not other-wise have executed; that at the time the defendants bought the land they knew of the representations made to their grantors by agents of the original grantee of the easement; and that the defendants bought the land because of the coal and for the purpose of mining and selling the coal.

The second and fourth counts of the counterclaim allege that the defendants are entitled to money judgments for the value of the coal under the above quoted provision of the easement in which the original grantee of the easement agreed "to pay any and all damages" to "land which may be suffered from the construction, operation, renewal, alteration, inspection or maintenance of such pipelines." The defendants contend that the coal constitutes "land" within the meaning of this provision, and that the plaintiff's refusal to permit the removal of the coal constitutes damage to the land for which the plaintiff has so promised to pay.

The first and second counts of the counterclaim seek money judgments for damages for the coal under the 135 foot strip of land which the plaintiff claims is necessary for the lateral adjacent and subjacent support of the pipelines. The third and fourth counts of the counterclaim seek money judgments for the coal under the southeasterly portion of the land which the defendants allege that they can enter only by crossing the plaintiff's pipelines. Defendants had removed the coal from the northwesterly half of the land before the action was started.

The plaintiff filed a motion for summary judgment dismissing the counterclaim, alleging that there was no genuine issue as to any material fact and that plaintiff was entitled to a summary judgment as a matter of law. The trial court granted this motion as to counts 1 and 2 but denied it as to counts 3 and 4. This judgment, therefore, while purporting to be a final disposition of counts 1 and 2, failed to dispose of counts 3 and 4 of the counterclaim and of the claim to injunctive relief set out in plaintiff's complaint.

The defendants attempt to raise many questions on the merits of the case in this appeal but we find that we are unable to

consider these questions. The order granting the summary judgment failed to comply with Rule 54(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which provides that when more than one claim is presented in an action the court may direct the entry of a final judgment on less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of such judgment. This rule further provides that in the absence of such a determination and direction any decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and that such a decision is subject to revision at any time before the entry of judgment adjudicating all the claims.

This court has held that such a decision, which fails to comply with Rule 54(b), is not a final judgment of the District Court from which an appeal to this court will lie. In Winsor v. Daumit, 7 Cir., 179 F.2d 475, this court, in an opinion by Judge Lindley, held that Rule 54(b) is a valid rule having the force and effect of a statute and must be complied with before an appeal may be prosecuted from a judgment which disposes of less than all of the claims involved in the action.

In Kaufman & Ruderman, Inc. v. Cohn & Rosenberger, 2 Cir., 177 F.2d 849, 850, the determination and direction required by Rule 54(b) had not been made when an appeal was taken from a judgment entered on one of the two causes of action which the complaint alleged. The court there affirmed the action of the trial court, but then, after its attention had been called to the failure to comply with Rule 54(b), the court entered a supplemental opinion holding that the judgment was not final and, therefore, not appealable. But the court there stated that:

"If the district judge within ten days makes such an express determination, we shall treat it as made *nunc pro tunc,* and our order of affirmance will stand; otherwise, the appeal will be dismissed."

In Winsor v. Daumit, supra, this court disapproved of such procedure and stated, 179 F.2d at page 478:

"It might be urged that we should, instead of dismissing the appeal, enter an interim order directing the district court to make a determination of the two conditions precedent to perfection of an appeal under rule 54(b). In view of the fact that the rule itself defines the power and function of the district court, orderly procedure requires that we dismiss the appeal, leaving to the discretion of the district court its further action in the premises."

In later decisions the United States Court of Appeals for the Second Circuit dismissed appeals from judgments which did not adjudicate all of the claims presented in the action and which did not comply with Rule 54(b). The court held that an appeal could be commenced only after there had been such compliance. Tobin Packing Co., Inc. v. North American Car Corp., 2 Cir., 188 F.2d 158; Lyman v. Remington Rand, Inc., 2 Cir., 188 F.2d 306; Republic of China v. American Express Co., Inc., 2 Cir., 190 F.2d 334. In those cases the court indicated that if the District Court complied with the rule and if the parties agreed to the procedure, the Court of Appeals would, on a new appeal, started after compliance, consider the appeal on its merits using the briefs and record which the parties had originally filed on the attempted appeal— the record to be supplemented to show compliance with the rule and the taking of a new appeal.

Rule 54(b) has also been held valid and compliance with it held necessary to a final judgment, where less than all of the claims were disposed of, in many other cases, including Etten v. Kauffman, 3 Cir., 179 F.2d 302; Bendix Aviation Corp. v. Glass, 3 Cir., 195 F.2d 267; and in the recent case, Maizel v. Epstein, D.C.Cir., 196 F.2d 44.

In Packard Motor Car Co. v. Gem Mfg. Co., 7 Cir., 187 F.2d 65, this court also held that where, as here, even though the question of failure to comply with Rule 54(b) is not raised by the parties, the judgment is not final, and that this court is, therefore,

without jurisdiction to entertain an appeal from a judgment adjudicating less than all of the claims in an action where the determination and direction required by the rule were not made by the District Court. See also Kaufman & Ruderman, Inc. v. Cohn & Rosenberger, supra.

In view of the above, the appeal here must be and it is hereby

Dismissed.