Patricia A. BURKE, as Limited Administratrix of and singular of the goods, chattels, and credits which were of Robert C. Burke, Deceased, Plaintiff,

v.

The WARREN COUNTY SHERIFF'S DEPARTMENT, Warren County Sheriff Frederick C. Lamy, Sergeant Michael Greene, Deputy Cal Jordan, Deputy John Watson, and the County of Warren, Defendants.

No. 90–CV–597.

United States District Court, N.D. New York.

Feb. 23, 1996.

Altman & Paine, Albany, New York (Frederick M. Altman, of counsel), for plaintiff.

Muller & Muller, Glens Falls, New York (Robert J. Muller, of counsel), for Warren County Sheriff's Department, Warren County Sheriff Frederick C. Lamy, Sergeant Michael Greene, Deputy Cal Jordan, and Deputy John Watson.

Law Offices of Robert A. Murphy, Jr., Albany, New York (David E. Winans, of counsel), for defendant Warren County.

### MEMORANDUM–DECISION AND ORDER

MUNSON, Senior District Judge.

Presently before the court is plaintiff's motion for reconsideration, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, of that portion of this court's June 30, 1995 Memorandum–Decision and Order ("MDO")[1] which granted summary judgment in favor of defendants County of Warren and Sheriff Frederick C. Lamy. Document ("Doc.") 52, at 17. All parties consented to the court deciding this motion without oral argument. Letter from Robert J. Muller, Esq., Sept. 27, 1995; Letter from Mark I. Plaine, Esq., Oct. 3, 1995; Letter from David E. Winans, Esq., Oct. 25, 1995. The memoranda and affidavits submitted in support of plaintiff's motion and defendants' response are fully sufficient for the disposition of this issue.[2] The following constitutes the court's Memorandum–Decision and Order.

### BACKGROUND

The facts of this case are detailed in the court's November 25, 1994 MDO. Doc. 33, at 2–6. Briefly, the complaint arises out of the suicide of Robert Burke in a Warren County jail cell the early morning of June 28, 1989. Patricia Burke, decedent's surviving spouse and limited administratrix of his estate, brought a civil rights suit under 42 U.S.C. § 1983, a state law negligence claim, and a third cause of action for "pain and suffering" against the County of Warren, Sheriff Frederick Lamy and the Sheriff's Department, Sergeant Michael Greene, and Deputies John Watson and Cal Jordan.

The court has previously granted defendants' motion for summary judgment on the civil rights claim and the claim for "pain and suffering." Nov. 25, 1995 MDO, Doc. 33, at 15. In the interests of justice and fairness, jurisdiction was retained over the negligence cause. Id. Defendants then renewed their motion for summary judgment on the negligence claim, which the court granted as to all defendants except Sergeant Greene. June 30, 1995 MDO, Doc. 52, at 17–18.

Plaintiff now contends that the court erred in granting summary judgment in favor of defendants County of Warren and Sheriff Frederick Lamy. Specifically, plaintiff disputes the court's conclusion that the disrepair of the jail's camera system was not a proximate cause of Robert Burke's suicide. Plaintiff's Memorandum ("Mem.") of Law, Doc. 55, at 2. For reasons set forth below, the motion for reconsideration must be denied.

### DISCUSSION

Plaintiff takes issue with the following passage from the court's previous decision determining that the malfunction of the jail's cameras was not a proximate cause of the harm alleged:

[I]t is not disputed that the cameras were designed to monitor prisoners in the "catwalk" area of the jail, not in the individual cells. See Sheriff Lamy's Deposition, Exh. 22 attached to Document 20, at 88–90. Thus the failure to maintain and utilize the cameras was not a proximate cause of Burke's death.

June 30 MDO, Doc. 52, at 16.

The plaintiff avers that a dispute does exist regarding the function of the camera, inas-

---

1. Reported at 890 F.Supp. 133 (N.D.N.Y.1995).

2. Local Rule 7.1(g) provides that "[n]o oral argument shall be heard on motions for reconsideration or reargument unless the court so directs."

much as its lens peers directly into the cell decedent hung himself in. Exhibit ("Exh.") C, attached to Affidavit ("Aff.") In Support of Plaintiff's Motion for Reargument, Doc. 56; Deposition ("Dep.") of Sheriff Lamy, Exh. 22, attached to Doc. 20, at 89 ("The particular cell in question here, the receiving tank, because of the door and because of the way the hall is configurated [sic], it happens to be in the wall directly across from this cell."). Plaintiff essentially argues that the physical location of the camera belies the assertion that its purpose is not to observe prisoners in the cells.

Defendants' response assumes that plaintiff brings her Rule 60(b) motion under ground six—the "catch-all" provision. Mem. of Law in Opposition to Plaintiff's Motion For Reconsideration, Doc. 59, at 1. Defendants first argue that plaintiff's contention regarding the cameras, even if true, would not provide a basis for liability against Sheriff Lamy since it is the county that is responsible for the maintenance of the jail. *Id.* at 2. Second, as regards the county, defendants assert that the plaintiff has not made out a sufficient argument to satisfy the requirements of the catch-all exception in this circuit. *Id.* at 4. Before the court addresses the merits of the instant motion, a preliminary matter concerning the procedural adequacy of plaintiff's motion must be addressed.

### Rule 60(b)

 Plaintiffs ostensibly bring this motion under Federal Rule of Civil Procedure 60(b). The court observes, however, that this motion is not properly brought under that rule. Rule 60(b) provides that a court may relieve a party from a "final judgment, order, or proceeding" for any of six reasons. Interlocutory orders and judgments are not subject to the strictures of Rule 60(b), but remain within "the complete power of the court rendering them to afford such relief from them as justice requires." Fed. R.Civ.P. 60(b) 1946 amendment advisory committee's note. In a case with multiple parties and claims, an adjudication as to one or more but fewer than all of the parties and claims is interlocutory, unless the court makes the proper certification pursuant to

Rule 54(b). *In re Martin–Trigona,* 763 F.2d 135, 139 (2d Cir.1985); Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2852, at 233–35 (2d ed. 1995). It does not matter if the partial adjudication is denominated a summary judgment. 6 James Wm. Moore, Moore's Federal Practice ¶ 54.40 (2d ed. 1995); *see, e.g., Texas Eastern Transmission Corp. v. McDonald,* 198 F.2d 929, 930–31 (2d Cir.1952).

In the instant case, several parties and two causes of action have been dismissed. Plaintiff's entire claim has not been dismissed, however: a negligence claim still lies against the defendant Sergeant Greene. Nor has the court certified its June 30 MDO with "an express determination that there is no just reason for delay and upon an express direction for the entry of judgment," as allowed by Rule 54(b). Such a certification would make the adjudications in the MDO final judgments within the meaning of the Federal Rules of Civil Procedure. *See, e.g., State of New York v. AMRO Realty Corp.,* 936 F.2d 1420, 1424 (2d Cir.1991). No such certification appears in the court's June 30 MDO. The Second Circuit requires strict compliance with Rule 54(b). *E.g., International Controls Corp. v. Vesco,* 535 F.2d 742, 747 (2d Cir.1976), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978). Not only must the Rule 54(b) determination and direction be expressly recited, an explanation must be given for the court's decision to make the certification. *In re Chateaugay Corp.,* 928 F.2d 63, 64 (2d Cir.1991) (per curiam). Because the June 30 summary judgments did not dispose of the entire case, and no Rule 54(b) certification appears in the challenged MDO, those adjudications were not final judgments within the meaning of Rule 60(b) and the instant motion as denominated is improper. *See* Fed.R.Civ.P. 54(b); 6a James Wm. Moore, Moore's Federal Practice ¶ 60.03[4] (2d ed. 1995).

 Because the summary judgments granted in favor of Sheriff Lamy and Warren County were interlocutory, the court has continuing power to reconsider them, and is not limited by the grounds specified for relief in Rule 60(b). *See Krome v. Merrill Lynch & Co., Inc.,* 110 F.R.D. 693, 694–95 (S.D.N.Y.

1986). A motion for reconsideration that does not come within the sweep of Rule 60(b) must comply with Local Rule 7.1(g), which requires service of papers within ten days from the entry of the challenged judgment, order, or decree. Federal Rule of Civil Procedure 6(a) further provides that weekends and legal holidays are excluded from the time computation when periods of eleven days or less are prescribed by any rule. The MDO was filed June 30 and service of the reconsideration motion papers was performed July 12, 1995. Taking into account two weekends and the Independence Day holiday, a modest calculation confirms that plaintiff's motion is timely. The court will therefore address the merits of the motion, notwithstanding that Rule 60(b) is the improper procedural vehicle to bring it.

### Sheriff Lamy

■ Addressing plaintiff's first argument, the court agrees with defendants that whether or not the disrepair of the cameras was a proximate cause of decedent's suicide is irrelevant to Sheriff Lamy's potential liability. The principle that it is the county, not the sheriff, who has the duty to maintain the jail is ingrained in New York law. *See, e.g., Bowman v. Campbell,* 193 A.D.2d 921, 922, 597 N.Y.S.2d 772, 774, *leave to appeal denied in part, dismissed in part,* 82 N.Y.2d 740, 622 N.E.2d 296, 602 N.Y.S.2d 796 (1993); *New York State Comm'n of Correction v. Ruffo,* 157 A.D.2d 987, 988, 550 N.Y.S.2d 746, 747 (1990); *McNulty v. Chinlund,* 62 A.D.2d 682, 686, 406 N.Y.S.2d 558, 560 (1978). Thus, even if the plaintiff could prove that the camera's disfunction caused the suicide, the sheriff would not be liable in negligence as he had no duty to repair it. *See Ramos v. 600 West 183rd Street,* 155 A.D.2d 333, 335, 547 N.Y.S.2d 633, 635 (1989) ("[M]ore than causation must be shown to make out negligence; there must also be a duty that has been breached."). Since the question of duty is reserved to judges in New York, *Palka v. Servicemaster Mgt. Servs.,* 83 N.Y.2d 579, 585, 634 N.E.2d 189, 192, 611 N.Y.S.2d 817, 820 (1994), and this particular question is settled in this state, the court affirms its prior decision that Sheriff Lamy had no duty to maintain the cameras.

■ The sheriff, along with the Commission of Correction, does have the duty to inspect the jail and presumably to notify the county of any needed repair work. *See Kemp v. Waldron,* 125 Misc.2d 197, 200, 479 N.Y.S.2d 440, 442 (Sup.Ct.1984), *aff'd,* 115 A.D.2d 869, 497 N.Y.S.2d 158 (1985); Dept. of James Meade, attached to Def.'s Notice of Motion, Doc. 41, at 9–10; Dep. of Sheriff Lamy, Exh. 22, attached to Doc. 20, at 39–42. So plaintiff could propose a theory that the sheriff, if aware of the disrepair of the camera, had a duty to notify the county. Such a theory was not raised however, and in any event, liability would have to be predicated on a duty in the county to maintain the cameras, an issue taken up below. Consequently, plaintiff's motion for reconsideration of the court's June 30, 1995 decision granting summary judgment in favor of Sheriff Lamy is denied. The court now turns to the question of Warren County's responsibility.

### County of Warren

Assuming that the location of the camera alone is sufficient to raise more than a "metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986), it is still not clear that the device's disrepair was even a cause-in-fact of the injury. Plaintiff has undeniably admitted that "[n]obody was assigned to monitor the cameras even had they been operating." Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue, Doc. 48, at 3. So, even had the cameras been operating, they could not have prevented decedent's suicide as nobody was tasked to watch the monitors. *See Livingston v. Gribetz,* 549 F.Supp. 238, 243 (S.D.N.Y.1982) ("An act or omission is not regarded as a cause of an event if the particular event would have occurred without it."). Pursuant to this analysis, the issue of whether the nonfunctioning camera was an actual cause of the injury fails both the "but-for" and "substantial factor" tests. *See* W. Page Keeton et al., Prosser and Keeton on Torts

§ 41, at 265 (5th ed. 1984 & Supp.1988) (hereinafter Keeton, Torts).[3]

The court perceives, however, a certain circularity to relying on this point alone. One might legitimately question whether the sheriff might not have assigned someone to monitor the camera, if it had only worked. The court is obliged in this case to reexamine the legal decision challenged by plaintiff: that the disrepair of the camera was not a proximate cause of the injury complained of. Proximate cause is one of the more unfortunate concepts in the law and a perpetual bane of freshman law students. Because "the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events," Keeton, Torts § 41, at 264, it is necessary to limit liability somewhere. Whether or not a court is candid about it, these limits often flow from policy considerations. *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 314, 414 N.E.2d 666, 670, 434 N.Y.S.2d 166, 169 (1980).

In New York, though, the preferred method of determining where liability ends is in the question of *duty*, not proximate cause. This has been true since Chief Judge Cardozo forsook the usual inquiry into proximate cause in favor of asking what duty defendant owed plaintiff in *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928). *See generally* Keeton, Torts § 43, at 284. The Court of Appeals has even phrased the negligence elements in a way suggesting that the only causation that is relevant is causation in fact:

[A] court always is required to undertake an initial evaluation of the evidence to determine whether the plaintiff has established the elements necessary to a cause of action in negligence, to wit: (1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof. *Akins v. Glens Falls City Sch. Dist*, 53 N.Y.2d 325, 333, 424 N.E.2d 531, 535, 441 N.Y.S.2d 644, 648 (1981).

The law of negligence, as it has developed in this state, defines duty by the foreseeability of the plaintiff, *Palsgraf*, 248 N.Y. at 344, 162 N.E. at 100, and by policy factors, *Palka*, 83 N.Y.2d at 585, 634 N.E.2d at 192, 611 N.Y.S.2d at 820. Duty is a legal question for the court. *Id.* The foreseeability of harm goes to the question of breach of duty, *Danielenko v. Kinney Rent A Car, Inc.*, 57 N.Y.2d 198, 204, 441 N.E.2d 1073, 1075, 455 N.Y.S.2d 555, 557 (1982), and is commonly a jury question, *Palka*, 83 N.Y.2d at 585, 634 N.E.2d at 192, 611 N.Y.S.2d at 820.[4] Whether harm is foreseeable or recognizable in a particular case is simply a restatement of the question of what constitutes due care in that case. *See* Keeton, Torts § 31, at 170. Though an issue for the fact-finder, the standard of due care is one established by law, *Cygan v. City of New York*, 165 A.D.2d 58, 67, 566 N.Y.S.2d 232, 238, *appeal denied*, 78 N.Y.2d 855, 578 N.E.2d 443, 573 N.Y.S.2d 645 (1991), and as such New York courts have more specifically defined due care as it applies in certain classes of situations, e.g., prison suicides. *See Gordon v. City of New York*, 70 N.Y.2d 839, 840, 517 N.E.2d 1331,

---

3. New York has adopted the "substantial factor" test. *See, e.g., Prunier v. City of Watertown*, 936 F.2d 677, 679 (2d Cir.1991).

4. New York's developing approach is similar to the negligence analysis long advocated by Dean Leon Green. *See generally* Leon Green, *The Causal Relation Issue in Negligence Law*, 60 Mich.L.Rev. 543 (1962). Dean Green proposes eliminating the issue of proximate cause altogether, leaving only the question of causation-in-fact. *See id.* at 548–49. The limits on the extension of liability are treated as a question of duty. *See id.* at 562–63. The only difference appears to be that Dean Green would leave all questions of foreseeability to the fact-finder in the question of breach, *id.* at 570–71, while that issue is bifurcated between judge and jury in this state. In Dean

Green's construction, the court decides duty informed only by political factors, namely precedent, prevention, economic impact, administrative considerations, efficient risk allocation, and justice. *Id.* at 562–63; *cf. Palka*, 83 N.Y.2d at 586, 634 N.E.2d at 193, 611 N.Y.S.2d at 821 (policy factors include "reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability."). In New York, presumably as a legacy of *Palsgraf*, the judge normally determines duty by the foreseeability of the plaintiff and policy considerations, while foreseeability of the harm that transpired is for the jury.

1332, 523 N.Y.S.2d 445, 446 (1987) (requiring showing that jailors had knowledge of suicidal tendencies and improperly supervised prisoner to prove breach of duty).

■ Returning to the instant matter, the court concludes that fair reconsideration of the prior granting of summary judgment in favor of Warren County requires an analysis of the county's duty. The issue of duty has been briefed in the motions preceding the two MDOs already issued in this case. *See* Mem. of Law in Support of Defendant's ("Def.'s") Motion for Summary Judgment, Doc. 37, at 3–5; Mem. of Law in Opposition to Def.'s Motion for Summary Judgment and In Support of Cross Motion, Doc. 45, at 8, 15. Defendant Warren County explicitly moved for summary judgment based on absence of duty. Def.'s Affidavit in Opposition, Doc. 50, at 1. As previously noted, the court is not limited by Rule 60(b), but reviews the current motion pursuant to its inherent power to revisit interlocutory orders. Consequently, the court perceives no difficulty in proceeding to the duty issue before haling a dismissed party back into court.

It is insufficient to merely state that the county has the duty to maintain the jail. The inquiry must be narrowed to ask whether Warren County is duty-bound to maintain its cameras for the purpose of preventing the suicide of prisoners. Of the reported New York decisions concerning tort suits for jailhouse suicides, one case addressed the issue of a county's own liability in negligence. In *Wilson v. Sponable* the plaintiff argued, inter alia, that the county was negligent in failing to provide "separate facilities, extra staff, and psychiatric care." 81 A.D.2d 1, 8, 439 N.Y.S.2d 549, 553, *appeal dismissed,* 54 N.Y.2d 834 (1981). While acknowledging the county's general duty to maintain the jail, 81 A.D.2d at 7, 439 N.Y.S.2d at 552, the Fourth Department stated that "no basis exists for extending the duty to include these additional benefits," 81 A.D.2d at 8, 439 N.Y.S.2d at 553. The court reasoned that whether or not a county pays for the extras is a "legislative-

executive decision" that should not subject the county to liability, 81 A.D.2d at 8–9, 439 N.Y.S.2d at 554. The question is whether the security cameras were an "additional benefit" within the meaning of *Wilson.*

The court believes they are. There is no end to the proposition that the county must employ all available technologies for the purpose of maintaining a jail optimally designed for the constant observation of prisoners. Indeed, the sheriff, who retains principal responsibility for the supervision of prisoners, *Bowman v. Campbell,* 193 A.D.2d 921, 922, 597 N.Y.S.2d 772, 774, *leave to appeal denied in part, dismissed in part,* 82 N.Y.2d 740, 622 N.E.2d 296, 602 N.Y.S.2d 796 (1993), *does not thereby incur a duty of round-the-clock* observation, *Wilson,* 81 A.D.2d at 7, 439 N.Y.S.2d at 553. Every new court-imposed duty costs dollars, and the maintenance of the jail is only one of "a multitude of public services" counties are charged with. 81 A.D.2d at 9, 439 N.Y.S.2d at 554. It is one thing to hold Warren County to a duty to maintain a reasonably safe and habitable jail and quite another to compel it to provide video surveillance of every cell. The policy of gauging the duty of maintenance against what is reasonable in terms of cost and benefits is especially applicable here, as it appears the cameras were a significant expense for questionable return. Dep. of Sheriff Lamy, Exh. 22, attached to Doc. 20, at 95 ("It is almost putting good money to a bad cause.").

The preceding analysis suffices to explain that under New York law, a county has no initial duty to install security cameras in its jail in order to protect prisoners from self-inflicted harm. An additional wrinkle is introduced into the mix by reason that the cameras had already been installed, apparently some twenty years ago. *Id.* at 92. The question that arises then is whether the county, having already undertaken the installation of the cameras, is under a duty to keep them continually operational. This proposition evidently sprouts from the "rested oars"[5] problem of tort law. *See generally*

---

5. The term comes from the rescue cases in which the problem was first observed: "It is true that, while the common law imposes no duty to rescue, it does impose on the Good Samaritan the

duty to act with due care once he has undertaken rescue operations. The rationale is that other would-be rescuers will rest on their oars in the expectation that effective aid is being rendered."

Keeton, Torts § 56, at 378. The *Wilson* court was aware of this issue. *See* 81 A.D.2d at 8–9, 439 N.Y.S.2d at 553–54. The underlying rationale of the doctrine is that some voluntarily assumed duties will reasonably induce inaction or some other reliance in other parties, so that a duty of due care will be imposed upon the volunteer.

The principle is sound, however, only to the extent the duty is assumed. Consequently, the *Wilson* court agreed that when a municipality undertakes to employ a crossing guard for students, liability for negligence will lie as the parents may reasonably rely on the crossing guard to conduct their children safely across streets. *Id.*, 439 N.Y.S.2d at 553 (citing with approval *Florence v. Goldberg,* 44 N.Y.2d 189, 375 N.E.2d 763, 404 N.Y.S.2d 583 (1978)). However, the Fourth Department also observed that voluntarily assumed duties do not always extend to cover the harm realized. *See Wilson,* 81 A.D.2d at 8, 439 N.Y.S.2d at 554. So, a defendant school district may be liable for injuries to students on school buses, but will not be liable for injuries occurring after the child has departed the bus and was en route home, because the district did not assume the duty of door-to-door service. *Pratt v. Robinson,* 39 N.Y.2d 554, 349 N.E.2d 849, 384 N.Y.S.2d 749 (1976). These cases may be distinguished on the point that in *Florence,* reliance of the parents was induced, while in *Pratt* the parents could not have reasonably relied on door-to-door service. The oars were reasonably rested in the first instance, but could not have been in the second.

It is difficult to analogize the rested oars doctrine to the case at bar. The only party which may have relied on the county's installation of the cameras was the sheriff and his deputies. However, it is clear they did not. *See* Dep. of Sheriff Lamy, Exh. 22, attached to Doc. 20, at 91 ("I don't even figure [the cameras] in my staffing analysis, neither does the Commission of Corrections. It is clearly spelled out in the minimum standards that you can't."). Moreover, it is clear they could not; the duty of the sheriff to supervise prisoners is statutorily imposed, N.Y. Corrections Law § 500–c (McKinney Supp.

*Lacey v. United States,* 98 F.Supp. 219, 220

1995), and nondelegable, *e.g. Kemp v. Waldron,* 115 A.D.2d 869, 870, 497 N.Y.S.2d 158, 159 (1985). Also, it does not appear that Warren County undertook the duty to provide a monitoring system to prevent suicides. At most, the uncontradicted evidence reveals that the cameras were originally intended to monitor the "catwalk" areas of the jail, though the nonfunctional camera in question also peered into the cell in which Robert Burke took his own life.

### *CONCLUSION*

Because neither Sheriff Frederick Lamy or Warren County owed a duty to decedent Burke to maintain video cameras in the county jail for the purpose of protecting him from self-inflicted injury, plaintiff's motion for reconsideration is DENIED. The granting of summary judgment in favor of these two defendants in this court's June 30 MDO is unchanged.

So ordered.