Charles AINI, I.C.E. Marketing Corporation, Jacob Aini and Topiclear Beauty Products, Inc., Plaintiffs,

v.

SUN TAIYANG CO., LTD., et al., Defendants.

SOCIETE INTERNATIONALE DE COSMETICS, a French Corporation, Plaintiff,

v.

Charles AINI, et al., Defendants.

Nos. 96 Civ. 7763(LAK), 96 Civ. 9318(LAK).

United States District Court, S.D. New York.

Aug. 21, 1997.

Peter L. Berger, Levisohn, Lerner, Berger & Langsam, Martin R. Friedman, O'Rourke & Friedman, for Plaintiffs in No. 96 Civ. 7763 and for Defendants in No. 96 Civ. 9318.

Harry Frischer, Solomon, Zauderer, Ellenhorn, Frischer & Sharp, Bernardo Burstein, Akerman, Senterfitt & Edison, P.A., for Certain Defendants in No. 96 Civ. 7763 and for Plaintiffs in No. 96 Civ. 9318.

**MEMORANDUM OPINION**

KAPLAN, District Judge.

These actions involve conflicting claims of ownership and infringement of the trademark TOPICLEAR as applied to certain cosmetic products. The issue of damages for alleged trademark infringement was severed and deferred, and the liability and other issues were tried to the Court in December 1996. The Court rendered extensive findings and conclusions earlier this year. *Aini v. Sun Taiyang Co.*, 964 F.Supp. 762 (S.D.N.Y. 1997), familiarity with which is assumed. The Court subsequently entered an interloc-

utory judgment resolving all issues save the trademark damages issue previously deferred which is scheduled for trial on September 3, 1997. The matter now is before the Court on the Ainis' motion [1] to amend the interlocutory judgment to permit I.C.E. Marketing, Inc. ("ICE"), an Aini-owned company, to assert a claim for trademark infringement damages.

In order to understand the remarkable turn that this motion represents, it is necessary to sketch the evolution of ICE's position in this case and its relationship to the changing fortunes of other Aini-related plaintiffs.

When this case began, it was the position of the Aini interests that the TOPICLEAR trademark was owned by Charles Aini. (Sec. Am.Cpt.¶ 2) Alternatively, they contended, the owner of the mark was Topiclear Beauty Products, Inc. ("TBPI"), a company jointly owned by the Ainis and their adversaries, control of which now is the subject of litigation in the state courts. (*Id.* ¶ 7) Needless to say, if the Ainis had prevailed on their principal claim, they would own the mark outright. If they prevailed only on the alternative claim that TBPI was the owner, they would share ownership with—and, depending upon the outcome of the state litigation—perhaps lose control to their adversaries.

ICE, a plaintiff in No. 96–7763 in which the Ainis' infringement claim was asserted, was described as "the sole and exclusive licensee *of Charles Aini* with respect to the TOPICLEAR trademark in the United States and elsewhere." (*Id.* ¶ 5) (emphasis added) The complaint thus made clear that ICE's alleged interest in the TOPICLEAR mark was solely the product of its status as a licensee of Charles Aini.

This position was reiterated in subsequent papers filed on behalf of the Ainis in this case. In an affidavit submitted by Michael Aini, ICE's president, in support of a motion for a temporary restraining order and a preliminary injunction, Aini swore that Charles Aini, his father, owned all right, title and interest in the TOPICLEAR mark in the United States and that ICE was "the sole

and exclusive agent, distributor and licensee of skin care products under the trademark TOPICLEAR in the United States ... *for and on behalf of Charles Aini.*" (M. Aini Aff., Oct. 11, 1996, ¶ 7; *see also* Plaintiff's memorandum of law in support of application for order to show cause for preliminary injunction and temporary restraining order, at 1 (Charles Aini is owner of mark and ICE the exclusive licensee))

Following the liability trial, the Court found that TBPI had acquired the TOPICLEAR mark and that Charles Aini never had any interest in it. This of course was fatal to ICE's infringement claim, given the Ainis' consistent position that ICE's rights, if any, derived exclusively from Charles Aini.

The parties were directed to settle an interlocutory judgment. The *Ainis'* proposed form of judgment dismissed all of ICE's claims with prejudice. (Prop. Judgment, ¶ 2 (submitted with letter from Peter Berger, Esq. to the Court, June 23, 1997)) This reflected the Ainis' acknowledgement that the determination that Charles Aini never had any rights in the TOPICLEAR mark deprived ICE, which claimed to be a licensee only of Charles Aini, of any basis for relief. The judgment entered by the Court contained this provision. Thus, all claims asserted on behalf of ICE were dismissed with prejudice on July 7, 1997.

In the meantime, counsel were engaged in discovery preparatory to the forthcoming trial of the damages case on behalf of TBPI. On August 6, 1997, after the conclusion of damages discovery, the Ainis asserted in the present application—for the first time—that ICE also was a designated distributor on behalf of TBPI and sought modification of the interlocutory judgment to permit it to assert a claim for infringement damages. (Letter, Peter Berger, Esq. to the Court, Aug. 6, 1997, at 1–2) The claim is based on a purported license agreement, supposedly dated August 1, 1996, by which Jacob Aini (Michael's brother), on behalf of TBPI, is said to have licensed ICE to market products under

---

1. The "motion" was made in the form of a letter in violation of the Federal Rules of Civil Procedure and the rules of this Court. The parties are advised that the Court will disregard such applications in the future save on discovery matters.

the TOPICLEAR mark. This document—which supposedly had been in existence for over a year—first was produced by the Ainis to opposing counsel on August 5, 1997.

There are many reasons to believe that the alleged 1996 TBPI–ICE license agreement is a phony. Among them are the following:

First, Michael Aini—whose signature supposedly is on the August 1, 1996 document—testified at trial on December 17, 1996, just four months after the agreement allegedly was signed:

> "Q Do you have a written distribution with Topiclear Beauty Products, Inc.?"
>
> "A No, not yet." (Tr. 184)[2]

This suggests that the license agreement was prepared after the trial and back dated.

Second, in a fax transmittal note under cover of which Michael Aini sent his counsel the supposed license agreement on July 28, 1997, Aini wrote: "Please find copy of agreement for license of Topiclear from TBPI to ICE Marketing *dated back* to 8/96 & notarized." (Mem. in opposition, Ex. E) (italics added) This gives at least some reason to suppose that the agreement was back dated, although not when.

Third, it is important to recognize that the Ainis' position—at the time the purported TBPI–ICE license agreement was signed—was that Charles Aini owned the entire right, title and interest to the TOPICLEAR mark and that the 1992 agreement, which the Court found to have resulted in TBPI's acquisition of the mark, never entered into force. Indeed, Charles Aini so testified (by affidavit) as late as November 22, 1996 before the United Kingdom trademark authorities. *See Aini v. Sun Taiyang Co.*, 964 F.Supp. at 771–72. Given the Ainis' position that Charles Aini was the owner and that TBPI was not, it strains credulity to suppose that the Ainis would have caused TBPI to license the mark to ICE, an act utterly inconsistent with their then-current position.

Fourth, if the August 1, 1996 document really existed prior to the trial of this action, it should have been produced during discovery. In any case, it was to the Ainis' interest to offer it in evidence. Their failure to do so, as they now acknowledge, made ICE's entitlement to relief entirely dependent upon Charles Aini's position which, they must have known, had substantial infirmities. Yet the Ainis did not offer it in evidence. Were there a credible explanation for the Ainis' failure to come up with the document before trial, matters might appear differently. But none has been offered.

Fifth, it has not escaped the Court's attention that the present application is not supported by any affidavit. Indeed, there is no affidavit stating that the purported license agreement is what it purports to be or that it was executed on the date that it bears.

Nevertheless, the Court need not rest on any conclusion that the evidence now sought to be offered in supported of ICE's belated claim is fraudulent. It makes no determination on that issue at this time, as there are ample alternative grounds for rejecting the application.

■ Although the paper from which ICE seeks relief is a judgment, it is interlocutory in nature. It did not dispose of all of the claims as to all of the parties. It therefore "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed.R.Civ.P. 54(b). Hence, the strict standards of Rule 60(b) do not apply. *E.g., Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1470, 1472–73 (4th Cir.1991); *Burke v. Warren County Sheriff's Dept.*, 916 F.Supp. 181, 183 (N.D.N.Y.1996). Nevertheless, such a motion is addressed to the discretion of the trial court and may be denied where relief is sought on a basis which a party inadvertently failed to raise earlier or the interests of justice otherwise so require. *See, e.g., Mateo v. M/S KISO*, 805 F.Supp. 761, 786 (N.D.Cal.1991); *Wilson v.*

---

**2.** The SIC parties made this point in their brief in opposition to this motion. The Ainis' response did not question that the testimony is inconsistent with the claim that the TBPI–ICE agreement was signed in August 1996 or otherwise seek to explain the apparent contradiction. Indeed, the Ainis have submitted no affidavit or other sworn evidence as to the authenticity of the alleged license agreement.

**330**

*United States,* 669 F.Supp. 563, 565 (E.D.N.Y.1987); *Johnson v. Bensalem Tp.,* 609 F.Supp. 1340, 1342 (E.D.Pa.1985).

Here, several factors warrant denial of the application independent of the merits of ICE's claim.

First, ICE has offered no explanation for its failure to raise this point at or during the trial or, indeed, in the two months that passed between the Court's decision and the entry of the interlocutory judgment. The most charitable reason for its failure to do so is inadvertence. This factor cuts against the application. *See Mateo,* 805 F.Supp. at 786.

Second, the delay in raising this point has been extraordinary. Even assuming that the failure to raise the point during trial were excusable, ICE waited almost eight months after trial, three months after the Court's decision, and one month after the entry of the judgment. Indeed, it did not even raise the point until after the discovery period on the damages issue expired, a point which was less than a month prior to the damages trial.

Third, the prejudice to the Ainis' adversaries of allowing relief from the judgment is manifest. The adversaries, who prepared for the damages trial in apparent good faith, would be met with an entirely new damages theory as well as a major issue regarding the authenticity of the recently produced document and the credibility of any testimony the Ainis might offer in its support. Discovery would have to be reopened and witnesses already deposed would have to be examined again. This would increase the cost of the litigation substantially—all because the Ainis, viewing their actions most charitably, carelessly failed to produce the document and carelessly failed to mention the existence of the alleged license agreement previously while alleging only that ICE's rights derived from Charles Aini.

For all of these reasons, the present motion is denied in all respects.

SO ORDERED.